[Civ. No. 51779. First Dist., Div. Two. May 14, 1981.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
STEVEN S., a Minor, Real Party in Interest.

COUNSEL

Arlo Smith, District Attorney, and John V. Carbone, Jr., Assistant District Attorney, for Petitioner.

No appearance for Respondent.

Jerrold M. Ladar, James P. Nevin and Nevin & Nevin for Real Party in Interest.

## OPINION

**TAYLOR, P. J.**—In this extraordinary writ proceeding initiated by the People of the State of California (hereafter People), we consider the propriety of an order of respondent juvenile court finding a minor defendant, real party in interest (hereafter minor), to be a fit and proper subject to be dealt with under the Juvenile Court Law.

A minor defendant may challenge a certification order made pursuant to section 707 of the Welfare and Institutions Code[1] by extraordinary writ in collateral proceedings commenced prior to the commencement of trial on those charges for which the minor defendant is certified as unfit for treatment within juvenile court facilities (*People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 714 [135 Cal.Rptr. 392, 557 P.2d 976]; Cal: Rules of Court, rule 1348(k)). Corollary review of a finding of fitness is permitted to the People, in a proper case of abuse of discretion, prior to the commencement of the section 602 hearing in the juvenile court, for upon the commencement of the jurisdictional hearing, jeopardy attaches, and the order becomes insulated from further review (see *In re Richard C.* (1979) 89 Cal.App.3d 477, 484 [152 Cal.Rptr. 787]).[2]

The minor, Steven S., was 17 years old and on probation to the Juvenile Court of Contra Costa County at the time of the commission of the offenses which led to the filing of a petition in the Juvenile Court of the City and County of San Francisco on December 29, 1980. The petition, which alleges that the minor comes within the provisions of section 602, charges the minor in 11 separate counts of violation of Penal Code section 245, subdivision (a) (assault with a deadly weapon), Penal Code

---

[1] Unless otherwise indicated, all references will be to the Welfare and Institutions Code.

[2] Rule 1348(i) of the California Rules of Court specifically provides for a continuance to seek such review as follows: "If the prosecuting attorney indicates an intention to seek review of a finding of fitness, the court on request of the petitioner shall grant a continuance of the jurisdiction hearing for not less than two judicial days to allow time within which to obtain a stay of further proceedings from the reviewing judge or appellate court."

sections 664/187 (attempted murder), Penal Code sections 664/211 (attempted robbery), and Penal Code section 211 (robbery), against six separate victims, Anthony Bowman (counts I, VIII), Michael Anstadt (counts II, V, IX), Dudley Bryant (counts III, XI), Les Schwab (counts IV and X), John Williams (count VI) and Sheila Frances (count VII).

It is further alleged that during the commission of the offenses, the minor was armed with a deadly weapon, a knife, within the meaning of Penal Code section .12022, subdivision (b), and that two of the victims, Bowman and Anstadt, suffered great bodily injury within the meaning of Penal Code section 12022.7 as a result of the attack.

Simultaneously with the filing of the section 602 petition, the People noticed a motion for a fitness hearing pursuant to section 707, subdivision (b), attaching thereto a declaration that the minor had been charged with criminal violations which came within the provisions of section 707, subdivision (b), and section 1203.06 of the Penal Code, and that the minor was not amenable to the care, treatment and training program available through the facilities of the juvenile court.[3]

Pursuant to the directive of section 707, subdivision (c) that "upon motion of the [district attorney] made prior to the attachment of jeopardy the court shall cause the probation officer to investigate and submit a report on the behavorial patterns and social history of the minor being considered for a determination of unfitness," the probation officer of the City and County of San Francisco, Donna Kabay, conducted an extensive investigation and submitted her report to the court. In the course of her investigation, the probation officer interviewed the minor and his parents, reviewed the history of the minor and his family and his behavior in and out of custody, and engaged in discussions with his counselors and his Contra Costa probation officer. The probation officer also reviewed the police reports and talked to all of the victims. Pursuant to rule 1347(a), California Rules of Court,[4] she also included

---

[3]California Rules of Court, rule 1346(a) provides: "If a minor (1) is alleged to be a person described in section 602 by reason of the violation of any criminal law; and (2) was, at the time of the alleged violation, 16 years of age or older, the prosecuting attorney may, prior to the attachment of jeopardy, request a hearing to determine whether the minor is a fit and proper subject to be dealt with under the juvenile court law...."

[4]Rule 1347(a), California Rules of Court, provides: "The court shall cause the probation officer to investigate and submit to it a report on the behavorial patterns and social history of the minor being considered for unfitness. This report shall include in-

information regarding each of the five criteria set forth in section 707, subdivision (c), and listed under rule 1348(b), California Rules of Court. She summarized her conclusions as follows:

"Steven [S.] is appearing before the Court at this time for a fitness hearing pursuant to Section 707(b) of the Welfare and Institutions Code. Steven is a 17 year old ward of the Contra Costa County Juvenile Court, who is at this time being detained at San Francisco Juvenile Hall.

"Steven [S.] is being charged with an extremely serious crime in which two people could possibly have died. As mentioned previously it is this Probation Officer's opinion that on the basis of the type of behavior exhibited in this offense, alone, Steven should be dealt with in the Adult Court. Aside from meeting the criteria of the gravity of the alleged offense the undersigned feels that to varying degrees Steven also meets the remaining criteria. As a result of the type of behavior he has exhibited in the past and the lack of influence the Juvenile Court and Probation Department has [*sic*] had over this minor and his behavior, this Probation Officer has come to the conclusion that Steven [S.] is not a fit and proper subject to be dealt with within the provisions of the Juvenile Court Law and therefore should be tried as an adult under the General Law. Although Steven does not have an extensive prior record and most of his offenses have been of the misdemeanor nature, through interviews with his Probation Officer, Mrs. Laird, and his parents, it is clear that Steven has established a pattern of violence and aggression that would seem to be attributable to the nature of an adult and not to that of a child. Steven seems to react toward any type of unpleasantness with violence and although numerous people have attempted to change this behavior it has all been to no avail. In fact, it appears that Steven's behavior has only become more criminally sophisticated. The under-

---

formation relevant to the determination whether or not the minor would be amenable to the care, treatment and training program available through the facilities of the juvenile court, *including information regarding all of the criteria listed under rule 1348(b)*. The report may also include information concerning:

"(1) The social, family, and legal history of the minor;
"(2) Any statement the minor chooses to make regarding the alleged offense;
"(3) Any statement by the parent or guardian;
"(4) If the minor is or has been under the jurisdiction of the juvenile court, a statement by the probation officer, social worker or Youth Authority parole agent who has supervised the minor respecting the relative success or failure of any program of rehabilitation; and
"(5) Any other information relevant to the determination of fitness." (Italics added.)

signed feels that this is not just a matter of rehabilitating the minor, if possible, but also a matter of protecting a society from the type of senseless violence exhibited in this incident."

The probation officer's report recommended "That Steven [S.] be declared an unfit subject for Juvenile Court Law and that the matter be referred to the District Attorney for prosecution in a Court of Criminal Jurisdiction."[5]

The matter came on for hearing before respondent court on January 23, 1981. At the hearing, the probation report prepared by the probation officer of the City and County of San Francisco and two probation reports to the Contra Costa County Juvenile Court dated November 12, 1980, and May 28, 1980, were introduced into evidence. Testimony was taken from probation officer Donna Kabay, from Dr. Roger Freed, a psychiatrist employed by minor's counsel, and from James McHale, an employee of the California Youth Authority.[6]

Dr. Freed, the psychiatrist called by the minor, testified that he had reviewed the report prepared by the probation officer, the police report, the two Contra Costa juvenile probation reports, talked to the family, interviewed the minor on two occasions for two hours for a total of four hours, and had the minor tested by a child psychologist. Although the psychiatrist did not speak to any of the victims or review their medical or hospital records, did not interview the San Francisco probation officer who prepared the report and who was assigned to the minor's case, did not speak to the minor's counselors who had information regarding the minor's recent conduct at the Youth Guidance Center, the counselors described in the probation report, anyone connected with the schools the minor had attended, or the probation officer in the Contra Costa Probation Department who had supervised the minor on probation, the psychiatrist testified that the minor was amenable to treatment in the juvenile court and saw no reason why he could not be handled in the juvenile court system.

---

[5]Rule 1347(b), California Rules of Court, provides: "The probation officer shall make a recommendation to the court as to whether the minor is a fit and proper subject to be dealt with under the juvenile court law."

[6]Respondent court's order refers to the testimony of "William McCann, Regional Office, California Youth Authority." The transcript of the hearing shows that the witness was James McHale.

James McHale, court liason and intake consultant with the division of institutions called by the minor, testified that he did not know if the Youth Authority could help the minor, but because he was "[a]lmost absolutely sure we can contain him," the Youth Authority would accept him. With respect to the amount of time the minor might be confined to the Youth Authority, McHale testified that first degree murder cases were usually assigned three years in the Youth Authority, but since mid-1979, "that has changed to five years." He estimated that the minor would be confined for 15 months to 2 years if committed to the Youth Authority.

Although the court commended the probation officer for her thorough and professional job in investigating and preparing the report, the court concluded that the seriousness and gravity of the offenses alone did not require a finding of unfitness, and giving great weight to the testimony of the psychiatrist that the minor, a "young man who has an arrested emotional development," could be rehabilitated if placed in a structured setting where he could be properly supervised, found the minor to be a fit and proper subject for treatment by the juvenile court under each and every one of the criteria enumerated in section 707, subdivision (c), as follows:

"1. The degree of criminal sophistication exhibited by the minor is low;

"2. The minor can be rehabilitated prior to the expiration of the Juvenile Court's jurisdiction (to his age 23, unless further extended, W & I §§ 1769(b), 1800, 1801).

"3. The minor's previous delinquency history (2 contacts) is of recent origin and minor in nature.

"4. Such attempts as there have been to rehabilitate the minor under the two contacts in 3, *supra*, have been fruitful, though not successful. There is no indication that the attempts were meaningful and this court finds that an attempt now is not without promise.

"5. The gravity of the offenses were serious. The circumstances disclose that the continuous transaction does not disclose a pattern of criminality which would disqualify the minor from amenability. The court finds that the gravity and circumstances of the offense, under the

evidence produced, do not make the minor unfit and finds the minor a fit subject."

Prior to the commencement of the jurisdictional hearing, the People filed their petition for writ of mandate/prohibition in this court, requesting a stay of proceedings in the juvenile court. We stayed all proceedings in the juvenile court pending our determination of this petition, and thereafter issued an alternative writ directing respondent juvenile court to set aside its order finding the minor to be a fit and proper subject or show cause before this court.

Although the People admit that the juvenile court judge has broad discretion in determining whether a minor is a fit and proper subject, the People contend that discretion is abused when the order "exceeds the bounds of all reason, all of the circumstances being considered'" (see *People* v. *Wagner* (1978) 20 Cal.3d 678, 683 [143 Cal.Rptr. 885, 574 P.2d 1237]). The People argue that "[a]s in the *Warner* case discretion was abused by respondent court. When all the circumstances of the offense are considered, the bounds of reason dictate that the minor is not a fit and qualified subject to be dealt with under the Juvenile Court Law. The circumstances and gravity of the offenses alleged are indeed serious, as the court found. Six innocent citizen victims returning to their car from a restaurant were set upon and attacked by a knife wielding group of youths. The minor showed no concern for human life as he stabbed his victims while making demands for their money. Indeed he stabbed victim Anstadt three times in the back with the knife that he continued to wear afterward. This is not the type of crime that should be handled in the juvenile court system." We agree.

We have found no cases construing the effect of the extensive amendments to section 707 made by the Legislature in 1979. To set the matter in perspective, however, we shall set forth some authority construing section 707 prior to the time it was amended.

### Section 707 Hearings Under Prior Law

Under the old section 707 "a finding that a minor is not a fit and proper subject to be retained in juvenile court facilities must be supported by substantial evidence that the minor would not be amenable to the care, treatment and training program available in such facilities. Whether the youth committed the act alleged in the petition is not the

issue in such a determination; the sole question is whether he would be amenable to treatment in the event that he is ultimately adjudged a ward of the court" (*People* v. *Chi Ko Wong, supra,* 18 Cal.3d 698, 716). Traditionally, the alleged offense was not itself sufficient to support a finding of unfitness, although it was one of the factors which the court was free to weigh along with other factors. However, under legislation enacted in 1975 setting forth specific criteria to be considered, *any one of the criteria* was sufficient to support a finding of unfitness (*People* v. *Chi Ko Wong, supra,* p. 717, fn. 15).[7]

■ Although the certification process must be attended by the minimum requirements of due process and fair treatment, strict rules of procedure and evidence are not applicable, for the transfer hearing does not directly result in an adjudication of guilt or delinquency; its only purpose is to determine whether the interests of the juvenile and society will be best served by the use of one of two possible forums—the juvenile court or the superior court, which will then hold the adjudicatory hearing (*People* v. *Chi Ko Wong, supra,* 18 Cal.3d, pp. 718-719). Thus, the receipt of a probation officer's report, which must necessarily contain hearsay and extrajudicial material, is appropriate and necessary. The minor, of course, may present witnesses to counteract or correct any portion of the report (*People* v. *Chi Ko Wong, supra,* pp. 717-719).[8] ■ Statements made by a juvenile to a probation officer may be admitted and considered in hearings on the issues of detention and fitness for juvenile treatment, although such statements are not admissible as substantive evidence, or for impeachment, in any subsequent proceeding to determine criminal guilt (*In re Wayne H.* (1979) 24 Cal.3d 595, 602 [156 Cal.Rptr. 344, 596 P.2d 1]).[9] Thus, it was proper for the court to admit the statement made by the minor to the probation officer (after *Miranda* warnings) in response to a question about the blood on the knife he was carrying in a sheath on his person when he was arrested, "he stated that he had killed a rat."

---

[7]Rule 1348(b), California Rules of Court, after setting forth the factors to be considered by the juvenile court (the rule, although adopted in 1977, includes the five criteria presently listed in section 707, subd. (c)), provides: "A determination that the minor is not a fit and proper subject to be dealt with under the juvenile court law may be based on *any one or a combination of the factors set forth above.*" (Italics added.)

[8]The probation report was not successfully challenged in any respect except that the court did agree not to consider a paragraph in the probation report dealing with suspected tampering of the victims' car.

[9]Rule 1347(a), California Rules of Court, provides that: "The report may also include information concerning ... (2) Any statement the minor chooses to make regarding the alleged offense; ..."

*Effect of the Amendments to Section 707 in 1979*

In 1979, the Legislature made sweeping changes in section 707 (Stats. 1979, ch. 944, § 19; Stats. 1979, ch. 1177, § 2). Section 707, subdivision (b) was amended to provide that "The provisions of subdivision (c) *shall* be applicable in any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of one of [16 enumerated] offenses:..."[10] (Italics added.)

The most significant change was the amendment of section 707, subdivision (c), to include a statutory presumption, under which a minor charged with any one of the sixteen offenses enumerated in subdivision (b) *shall be presumed* to be not a fit and proper subject to be dealt with under the Juvenile Court Law unless the juvenile court concludes, based upon evidence and an evaluation of criteria set forth by the Legislature, that the minor would be amenable to the care, treatment and training program available through the facilities of the juvenile court, with the further requirement that the juvenile court make *findings* that the minor *is fit and proper under each and every one of the five criteria.*[11]

---

[10]Section 707, subdivision (b) lists the following offenses: "(1) Murder;
"(2) Arson of an inhabited building;
"(3) Robbery while armed with a dangerous or deadly weapon;
"(4) Rape with force or violence or threat of great bodily harm;
"(5) Sodomy by force, violence, duress, menace, or threat of great bodily harm;
"(6) Lewd or lascivious act as provided in subdivision (b) of Section 288 of the Penal Code;
"(7) Oral copulation by force, violence, duress, menace, or threat of great bodily harm;
"(8) Any offense specified in Section 289 of the Penal Code;
"(9) Kidnapping for ransom;
"(10) Kidnapping for purpose or robbery;
"(11) Kidnapping with bodily harm;
"(12) Assault with intent to murder or attempted murder;
"(13) Assault with a firearm or destructive device;
"(14) Assault by any means of force likely to produce great bodily injury;
"(15) Discharge of a firearm into an inhabited or occupied building;
"(16) Any offense described in Section 1203.09 of the Penal Code."

[11]Section 707, subdivision (c) provides: "With regard to a minor alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of any of the offenses listed in subdivision (b), upon motion of the petitioner made prior to the attachment of jeopardy the court shall cause the probation officer to investigate and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness. Following submission and consideration of the report, and of any other relevant evidence which the petitioner or the minor may wish to submit the * * * minor shall be presumed to be not a fit and proper subject to be dealt with under the juvenile court law unless * * * the juvenile

The Legislature intended, by the use of the word "shall" that the provisions of section 707, subdivision (b) and subdivision (c) be mandatory rather than permissive (Welf. & Inst. Code, § 15).[12]

█ The Legislative power to create presumptions, in civil and criminal cases, is well established (Witkin, Cal. Evidence (2d ed. 1966) § 253, p. 215). Witkin notes that the Evidence Code classifies many presumptions as affecting either the burden of producing evidence or the burden of proof, but when a presumption created by statute remains unclassified, "it may be difficult to determine whether a particular presumption is a presumption affecting the burden of proof or a presumption affecting the burden of producing evidence" (Evid. Code, § 660, com.; Witkin, Cal. Evidence (2d ed. 1966) § 254, p. 216).

This court must therefore undertake the difficult task of classifying the presumption, under the criteria of the code, in the absence of any prior judicial decision on the subject.

Evidence Code section 603 defines a presumption affecting the burden of producing evidence as "a presumption established to implement

---

court concludes, <u>based upon evidence, which evidence may be of extenuating or mitigating circumstances</u>, that the minor would be amenable to the care, treatment, and training program available through the facilities of the juvenile court based upon an evaluation of <u>each of</u> the following criteria:

"* * * (<u>1</u>) The degree of criminal sophistication exhibited by the minor. * * *

"* * * (<u>2</u>) Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction. * * *

"* * * (<u>3</u>) The minor's previous delinquent history. * * *

"* * * (<u>4</u>) Success of previous attempts by the juvenile court to rehabilitate the minor. * * *

"* * * (<u>5</u>) The circumstances and gravity of the offenses alleged to have been committed by the minor.

"A determination that the minor is a fit and proper subject to be dealt with under the juvenile court law shall be based on a finding of amenability after consideration of the criteria set forth above, and * * * <u>findings</u> therefor * * * recited in the order <u>as to each of the above criteria that the minor is fit and proper under each and every one of the above criteria. In making a finding of fitness, the court may consider extenuating or mitigating circumstances in evaluating each of the above criteria.</u> In any case in which a hearing has been noticed pursuant to this section, the court shall postpone the taking of a plea to the petition until the conclusion of the fitness hearing and no plea which may already have been entered shall constitute evidence at such hearing." Asterisks *** indicate deletions by amendment. <u>Underline</u> indicates changes or additions by amendment.

[12]Section 15 of the Welfare and Institutions Code provides that "'Shall' is mandatory and 'may' is permissive."

no "public policy other than to ... facilitate the determination of the particular action in which the presumption is applied."[13]

The effect of a presumption affecting the burden of producing evidence is to "require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption." (Evid. Code, § 604.)

Evidence Code section 605 defines a presumption affecting the burden of proof as "a presumption established to ... facilitate the determination of the particular action in which the presumption is applied, such as the policy in favor of establishment of a parent and child relationship, the validity of marriage, the stability of titles to property, or the security of those who entrust themselves or their property to the administration of others."[14]

The effect of a presumption affecting the burden of proof is "to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact" (Evid. Code, § 606).

Prior to the amendments to section 707, subdivision (c), the standard for determining a minor unfit lacked explicit definition (*Jimmy H.* v. *Superior Court* (1970) 3 Cal.3d 709, 714-715 [91 Cal.Rptr. 600, 478 P.2d 32]; *People* v. *Allgood* (1976) 54 Cal.App.3d 434, 446 [126 Cal.Rptr. 666]). Some commentators had even suggested that there ought to be a presumption of fitness for treatment as a juvenile (*Jimmy H.* v. *Superior Court, supra*, p. 715, fn. 3). The most recent cases have enunciated a standard, first pronounced in *Jimmy H.* v. *Superior Court, supra*, that "'... *There must be substantial evidence adduced at the hearing* that the minor is not a fit and proper subject for treatment as a juvenile before the court may certify him to the superior court for

---

[13]"'Burden of producing evidence' means the obligation of a party to introduce evidence sufficient to avoid a ruling against him on the issue." (Evid. Code, § 110.)

[14]"'Burden of proof' means the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court. The burden of proof may require a party to raise a reasonable doubt concerning the existence or nonexistence of a fact or that he establish the existence or nonexistence of a fact by a preponderance of the evidence, by clear and convincing proof, or by proof beyond a reasonable doubt.

"*Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence*" (Evid. Code, § 115; Italics added).

prosecution. [Citations.]'" (*People* v. *Carl B.* (1979) 24 Cal.3d 212, 218 [155 Cal.Rptr. 189, 594 P.2d 1]).

Cases which predate the 1979 amendments to section 707 are not authority for propositions not there considered (*People* v. *Belleci* (1979) 24 Cal.3d 879, 888 [157 Cal.Rptr. 503, 98 P.2d 473]; *People* v. *Ceballos* (1974) 12 Cal.3d 470, 481 [116 Cal.Rptr. 233, 526 P.2d 241]). Although it is common knowledge, earlier recognized and codified in law, that certain juveniles exhibit a degree of criminal sophistication or antisocial behavior comparable to the worst adult offenders, and ought realistically to be treated accordingly (*People* v. *Morrison* (1980) 110 Cal.App.3d 476, 484-485 [168 Cal.Rptr 190]; see *Green* v. *Municipal Court* (1976) 67 Cal.App.3d 794, 800-801 [136 Cal.Rptr. 710] (construing 1975 amendments to § 707)), we are aware of no authority which has considered the effect of the 1979 amendments. ■ Amendment of a statute demonstrates an intent to change existing law (*People* v. *Taylor* (1978) 81 Cal.App.3d 973, 977 [146 Cal.Rptr. 821]). ■ We conclude that the amended statute (§ 707, subd. (c)) places upon the minor the burden of proof as to the nonexistence of the presumed fact (Evid. Code, §§ 605, 606) and that the minor's burden of proof requires proof by a preponderance of the evidence (Evid. Code, § 115).

Section 607 of the Evidence Code is not applicable, for a section 707 hearing is not a criminal proceeding which adjudges the minor's guilt or innocence.[15] Although a minor may, under section 707, subdivision (c) submit evidence of "extenuating and mitigating circumstances," no provision compels the minor to testify at the hearing,[16] and any statements made by the minor to the probation officer may not be used against him in subsequent proceedings to determine criminal guilt (*In re Wayne H., supra*, 24 Cal.3d 595, 602). The Legislature clearly had the power to establish the presumption, and we perceive no constitutional defects in the statute.

---

[15]Section 607 of the Evidence Code provides that "When a presumption affecting the burden of proof operates in a criminal action to establish presumptively *any fact that is essential to the defendant's guilt*, the presumption operates only if the facts that give rise to the presumption have been found or otherwise established beyond a reasonable doubt, and, in such case, the defendant need only raise a reasonable doubt as to the existence of the presumed fact." (Italics added.)

[16]Rule 1342(a), California Rules of Court, provides: "If a person is called as a witness in the juvenile court and it appears to the court that the testimony or other evidence being sought may tend to incriminate the witness, the court shall advise the

*Evaluation of the Evidence in Light of the Presumption*

■ The basic fact from which the presumption arises in this case having been established by the petition and the motion for fitness hearing filed against the minor pursuant to section 707, subdivision (b), and no question having arisen as to the basic fact, the juvenile court, under section 707, subdivision (c), was required to assume the existence of unfitness unless persuaded to the contrary by a preponderance of the evidence (see Evid. Code, § 606; Legis. Com. coms.).

■ We have concluded that the minor has not established his amenability under any of the five criteria by the requisite degree of proof.

(1) *The degree of criminal sophistication exhibited by the minor*

■ Respondent court concluded that the minor's criminal sophistication was low because he kept a blood stained knife on his person without wiping off the blood. The probation officer disagreed, noting a behavior pattern of street fighting and aggressive behavior, beginning with minor fights with his peers at an early age, escalating to the seeking out of victims, and ending with the most recent stabbings which almost resulted in death of one of the victims. She also noted that on other occasions when the minor had been caught fighting, he had been in possession of a knife, and that he had returned to his parents' home with physical wounds, once a severe cut under the eye from which he still bears a scar, and once with a cast on his cut hand. The probation officer further concluded that the circumstances of the crime indicated sophistication. "According to the victims, Steven stabbed a victim once then chased him into a doorway and stabbed him three more times. He also attempted to stab another victim twice with no success. And, finally, after demanding and receiving $600.00 from a third victim attempted to stab him again with no success but ripping the victim's clothes on his back to shreds with his knife."

The psychiatrist testified that Steven had a "low degree of criminal sophistication." He testified that Steven "goes very much by the moment," and "doesn't plan ahead," and the stabbing, not being pre-planned, "seemed to be more a reaction to the circumstances." The cir-

witness of his privilege against self-incrimination and of the possible consequences of testifying. The court shall also inform the witness of the right to representation by counsel and, if indigent, of the right to have counsel appointed."

cumstances of the offense related in the probation report and the police reports are to the contrary.

We do not set forth all of the remaining evidence which indicates that the minor had a considerable degree of criminal sophistication. It is sufficient to say that the minor has not established by a preponderance of the evidence that he is a fit and proper subject under this criterion.

(2) *Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction*

The minor in this case will reach 18 years of age on May 6, 1981. If he is found to be a person described in section 602 by reason of the violation of offenses listed in subdivision (b) of section 707, and committed to the Youth Authority, he is required to be discharged upon the expiration of a 2-year period of control or when he reaches his 23d birthday, whichever occurs later, unless an order for further detention has been made by the committing court pursuant to article 6 (commencing with § 1800) (§ 1769).

The pshchiatrist testified that he believed that the minor could be rehabilitated.

The probation report stated that "In the past Steven has spent only brief periods in custody and his behavior while in custody indicates that these brief periods had little effect on the minor. If the past weeks in juvenile hall are any indication whatsoever of the type of progress and rehabilitation that would occur on the minor's behalf then it is highly questionable as to whether this minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction.

"Since coming to the attention of this Probation Officer Steven has never exhibited any guilt nor remorse for his alleged actions in this incident. He has failed to realize the seriousness of his actions and of the position that he is now in. His concerns seem to be only for himself and his own well being. Steven thinks very little of injury that he may cause to another person and he strikes out at others upon the slightest provocation. It is this Probation Officer's opinion that it will take a great deal of intensive treatment for the rehabilitation of this minor."

The court found although the psychiatrist "couldn't guarantee he [the minor] was going to be rehabilitated but he felt there was a good chance if he was put in a proper setting he could be rehabilitated perhaps in two years," and that given the amount of the time the juvenile court could retain jurisdiction, "there seems to be little doubt there would be ample opportunity for rehabilitation."

In so finding, respondent court was greatly influenced by statements made by the Supreme Court in *People* v. *Carl B. supra*, 24 Cal.3d 212, 219, citing *Jimmy H.* v. *Superior Court, supra*, 3 Cal.3d 709, 714-715, for the proposition that "'... Since the dispositive question is the minor's amenability to treatment through the facilities available to the juvenile court, testimony of experts that the minor can be treated by those facilities is entitled to great weight in the court's ultimate determination.'"

In *People* v. *Carl B., supra*, the defendant, 17 years old, had been found not a fit and proper subject and, following initiation of adult criminal proceedings, had pleaded guilty to robbery. Subsequently, he had been referred, pursuant to section 707.2, to the Youth Authority under a 90-day commitment for its determination as to which of the state facilities would best meet his needs.[17] Following the 90-day commitment, the Youth Authority issued its report finding the defendant was amenable to Youth Authority programs. The report was based on interviews and testing of the defendant by the Youth Authority's psychiatric consultant and clinical psychologist, and the defendant's probation officer, in a supplemental probation report, concurred with the Youth Authority's evaluation. The court nevertheless ordered the defendant committed to state prison. The Supreme Court, in reversing the judgment, noted that the defendant's probation officer, the psychiatric consultant, the clinical psychologist and the Youth Authority itself each concluded that the defendant was a suitable subject for commitment to the Youth Authority. The Supreme Court held that the

---

[17]Section 707.2 provides: "*Prior to sentence*, the court of criminal jurisdiction may remand the minor to the custody of the California Youth Authority for not to exceed 90 days for the purpose of evaluation and report concerning his amenability to training and treatment offered by the Youth Authority. No minor who was under the age of 18 years when he committed any criminal offense and who has been found not a fit and proper subject to be dealt with under the juvenile court law shall be sentenced to the state prison unless he has first been remanded to the custody of the California Youth Authority for evaluation and report pursuant to this section and the court finds after having read and considered the report submitted by the Youth Authority that the minor is not a suitable subject for commitment to the Youth Authority." (Italics added.)

*"unanimous opinion of these persons who have studied defendant should be given great weight."* As we stated in *Jimmy H., supra,* "'Testimony of expert witnesses *may* also provide guidance for the court's decision on the fitness of a minor for treatment as a juvenile. [Citation.] Since the dispositive question is the minor's amenability to treatment through the facilities available to the juvenile court, testimony of experts that the minor can be treated by those facilities is entitled to great weight in the court's ultimate determination.' (*Jimmy H. v. Superior Court, supra,* 3 Cal.3d 709, 714-715.) Certainly the YA and its staff should be considered 'experts' on the subject of amenability to YA training and treatment." (*Carl B. v. Superior Court, supra,* p. 219; italics added.)

*Jimmy H.* was decided in 1970, long before the amendment of section 707, subdivision (c), to include the presumption of unfitness and the criteria to be considered. Nevertheless, the court at that time pointed out that "although expert testimony indicating a juvenile's amenability to treatment offered by the juvenile facilities weighs heavily in his favor, *it is not conclusive.* Other factors which may be considered by the juvenile court in the exercise of its discretion in certifying a minor to the superior court as not amenable to treatment as a juvenile are the following: the nature of the crime allegedly committed, the circumstances and details surrounding its commission, the minor's behavior pattern including his past record, if any, of delinquency, his degree of sophistication especially as the same may relate to criminal activities, and contradictory opinion testimony. [Citations.]" (*Jimmy H. supra,* pp. 715-716; italics added.)

Moreover, *Carl B.* involved a proceeding pursuant to section 707.2 to determine whether a minor, proceeded against in adult court, should be sentenced to state prison or committed to the Youth Authority. We agree that the Youth Authority and its staff should be considered experts on the subject of amenability to Youth Authority training and treatment in such a proceeding. A fitness hearing conducted pursuant to section 707, subdivisions (b) and (c) has different objectives: a fitness hearing is an examination into whether a minor, charged with statutorily enumerated violent offenses in juvenile court, is a fit and proper subject to be dealt with under the Juvenile Court Laws, based upon an evaluation of each of five specific criteria set forth by the Legislature in the 1979 amendments.

In any event, in *Carl B.*, the defendant's probation officer, the psychiatric consultant, the clinical psychologist and the Youth Authority itself *each* concluded that the defendant was a suitable subject for the Youth Authority: the *"unanimous opinion* of these persons who have studied defendant should be given great weight" (*Carl B., supra,* pp. 218-219; italics added). ▮ We point out that the psychiatrist who examined the minor in this case is not a Youth Authority psychiatrist or clinical consultant with intimate knowledge of Youth Authority treatment and training programs and the opportunity to observe the minor during a 90-day period, but is a private psychiatrist, hired by the minor's counsel to examine the minor, who presumes to profess expertise over the matter of whether the minor is a fit and proper subject to be dealt with under Juvenile Court Law on the basis of a four-hour interview and some uncompleted clinical testing. We do not believe that the great weight accorded the testimony of this one privately employed psychiatrist, whatever his credentials, was justified in light of all of the circumstances disclosed by the evidence presented at the hearing and the contrary recommendations of the San Francisco probation officer, who had conducted an extensive investigation into the matter, and the Contra Costa probation officer, who had supervised the minor and whose attempts to rehabilitate the minor in Contra Costa County had failed. We conclude that the evidence does not overcome the presumption of unfitness on this criterion.

(3) *The minor's prior delinquent history*

The minor's previous delinquent history is set forth in the probation report as follows: "The first referral that this Probation Officer has record of on behalf of Steven occurred on June 11, 1979. At that time Steven was cited by the Concord Police Department for violation of Section 4121 of the Municipal Code, possession of a BB gun.

"On January 5, 1980, Steven was again referred to the Contra Costa County Probation Department on a 601 Welfare and Institutions Code basis.

"On February 8, 1980, Steven was referred to the Contra Costa County Probation Department by the BART police for violation of Section 148 of the Penal Code, resisting arrest and violation of Section 13001 of the Health and Safety Code, throwing a flammable substance. This matter was closed at Intake.

"On May 6, 1980, a petition was filed on behalf of Steven [S.] in San Mateo County alleging one Count of exhibiting a deadly weapon and one Count of disturbing the peace. Only Count II of that petition, violation of Section 415(1, 2 & 3) of the Penal Code, fighting in public, using offensive language in public and disturbing a person with loud and offensive noise [*sic*]. At that time Steven was living with his sister. However, because his sister was moving he had to return to his parents' home. The case was then transferred from San Mateo County to Contra Costa County. Steven was placed on probation and made to pay a $50.00 fine.

"On October 8, 1980, at 2:45 P.M. Steven was cited by the San Francisco Police Department for malicious mischief. He and a companion apparently broke the windows of a Doggie Diner Restaurant because the cook was too slow in making their order. Steven failed to appear for this citation interview after numerous attempts by the Probation Department to persuade him and his mother to appear. The matter was then closed at Intake with referral to the police liason for booking if any further contacts with the minor should occur.

"On October 9, 1980, at 3:00 in the morning, Steven and numerous other Latino companions were cited for curfew violation. This matter was closed at Intake by the San Francisco Probation Department.

"On October 20, 1980, a supplemental petition was filed by the Contra Costa County Juvenile Court on behalf of Steven [S.]. This petition was sustained to both Counts, Count I being violation of Section 166.4 of the Penal code, contempt of Court in that Steven was in violation of Court order to attend school. Count II of the petition was violation of Section 626.8(a) of the Penal Code being upon a school ground without lawful business. Steven was suspended from school as a result of frequent truancy. The circumstances of the incident in Count II of the above were that Steven was ordered to remain off the school campus of Mt. Diablo High School after a fight with a student of that school which then led to an altercation between white and Chicano students. After being ordered not to return to Mt. Diablo campus Steven did return to that campus the next day and was involved in another fight. As a result of this petition Steven's probation was continued until he reached the age of 18. *Since that time Steven has been in violation of all orders that were set down for his program of probation.*" (Italics added.)

The probation report also recites three instances of disruptive and violent behavior while the minor has been in custody for the most recent offenses, including an incident in which he lunged at and threatened to kill his counselor at juvenile hall.

The psychiatrist testified that although the probation officer testified that the minor was unceasingly in violation of court orders, no inference could thereby be drawn that he couldn't be reached by the juvenile process.

The court acknowledged that "his previous delinquent history is a matter to which the court has to give very serious attention in this matter."

It is obvious that the evidence does not overcome the presumption of unfitness on this criterion.

(4) *Success of previous attempts by the juvenile court to rehabilitate the minor*

The success of previous attempts by juvenile court to rehabilitate the minor is set forth in the probation report as follows: "Steven is at this time a ward of the Court in Contra Costa County and he has been on probation there for approximately one year. Steven has also had contacts with the San Francisco Probation Department and the San Mateo County Probation Department prior to and during the time he was on probation in Contra Costa County. Steven has unceasingly been in violation of numerous Court orders since his contacts with the San Mateo County Probation Department and he flagrantly disobeys the directives of his Probation Officer. Numerous attempts have been made to rehabilitate Steven through placements at numerous schools in Contra Costa and San Mateo Counties, all to no avail. Although Steven has never spent time at a boys' ranch or the California Youth Authority it appears that he has established a behavorial pattern that has been completely unaffected by any counseling, guidance or supervision provided him through several Probation Departments.

"The undersigned Probation Officer has discussed this matter with Steven's Probation Officer in Contra Costa County, Miss Joan Baird. Miss Baird has stated that all the attempts that have been made by Contra Costa County to rehabilitate this minor have failed and in her

opinion Steven is not a fit and proper subject to be dealt with under the Juvenile Court Law."

The psychiatrist testified that since the juvenile court did not "attempt adequately" to rehabilitate the minor, its success would have to be low, and that rehabilitation "could be" successful if it were "conducted under appropriate counseling, supervision, and psychiatric input."

It goes without saying that the evidence is not sufficient to overcome the presumption on this criterion.

(5) *The circumstances and gravity of the offenses alleged to have been committed by the minor*

The circumstances of the offense are described in the probation report prepared pursuant to section 707 as follows:

"Police Report #802346416 states that on December 24, 1980 at 10:20 P.M. the six victims were walking along Valencia Street just having come from dinner at 20th and Valencia. The victims were walking back to their car which was parked on Cunningham Street at which time the four victims, Michael Anstadt, Les Schwab, Sheila Frances and John Williams, were surrounded by a group of Latino male juveniles who came from the area of the Mission playground park. At that time victim Williams asked why they were bothering them and he was punched in the face, knocking him to the ground by an unknown suspect. One of the minors, later identified as Solomon [M.], produced the knife and demanded their money. Victims Anstadt and Schwab then turned and began running in the direction of victim Dudley Bryant and Anthony Bowman who were walking behind the other four victims. Several of the suspects chased victims Schwab and Anstadt and suspects Solomon [M.] and Steven [S.] both lunged at Schwab and attempted to stab him with their knives. However, Schwab only sustained minor scratches. Victim Bowman then walked on the scene and he was stabbed in the chest. Victim Anstadt was also stabbed in the right shoulder at this time by Steven [S.] Victims Anstadt, Schwab, Bowman and Bryant then ran into a doorway and at that time they were confronted by [Steven S.] and [Solomon M.] who again demanded money. At that time Victim Bowman stepped forward in order to state that they had no money and he was again stabbed in his abdomen by suspect [Solomon M.] He grabbed [Solomon M.'s] hand to prevent further stabs and [Solomon M.] then lunged at Schwab in order to stab him.

Also at that time suspect Steven [S.] stabbed victim Michael Anstadt three more times in the lower back. Steven [S.] also at that time ran up to victim Dudley [Bryant] with his knife and demanded his money. Dudley [Bryant] reached into his pocket and handed approximately $600.00 to Steven [S.] Victim Bryant then turned and as he turned he felt his coat being cut down the back by Steven [S.].

"Shortly after this incident occurred the police arrived on the scene and along with victim Schwab they found suspect Steven [S.] in the area of 20th and Mission Streets where he was apprehended. At that time Steven [S.] had in a sheath on his belt a knife covered with blood. Also in Steven's possession was a blue bandana which victim Schwab states [Steven S.] was wearing at the time the incident occurred."

The probation report goes on: "This Probation Officer feels that behavior exhibited in this incident alone is serious enough to warrant that the minor be tried in the Adult Court. Two of the victims, Mr. Anstadt and Mr. Bowman, experienced a great deal of physical injury, Mr. Anstadt being stabbed four times and Mr. Bowman being stabbed three times. Mr. Anstadt's injuries were such that they nearly resulted in his death. This of course is not to mention the psychological damage to all six victims.

"This is not just an incident of a single stabbing but according to the victim, Steven stabbed Mr. Anstadt once then chased him into a doorway and stabbed him three more times and then trying to stab Mr. Schwab again and then after that demanding and receiving $600.00 from Mr. Bryant and after receiving the money trying to stab Mr. Bryant but only ripping his clothes to shreds. Fortunately, Mr. Schwab and Mr. Bryant sustained only minor scratches from this incident but certainly not because the minor did not attempt to hurt them but only because they were able to fend the minor off. This minor's involvement in this incident can only be described as vicious and yet he has failed to show any remorse for his behavior nor does he exhibit concern for the condition of the victims.

"Mr. Bowman was in the hospital as a result of his injuries for one week. He was released from the hospital, however, according to his doctor he will not be able to work for two months. Mr. Anstadt was released from the hospital on January 7. Mr. Anstadt's injuries appear to be more serious and complications such as infection and pneumonia

had set in. Therefore, he was in the hospital a longer time. It is indefinite when Mr. Anstadt will be able to return to work.

"There is no doubt as to the gravity or seriousness of the alleged offense and the seriousness of the effect this offense has had on the lives of the six victims."

The psychiatrist testified that the gravity of the offenses committed by the juvenile was no reason why he could not be handled in the juvenile court system. The court concluded that "the seriousness and gravity alone does not necessarily mean that the court must find that the juvenile is not a fit person for treatment in [a] juvenile facility."

In 1970, at the time *Jimmy H.* v. *Superior Court, supra,* 3 Cal.3d 709, 714, was decided, section 707 contained a provision that "In determining whether the minor is a fit and proper subject to be dealt with under this chapter, the offense, *in itself,* shall not be sufficient to support a finding that such minor is not a fit and proper subject to be dealt with under the provisions of the Juvenile Court Law." (Italics added.) Under legislation enacted in 1975, setting forth specific criteria to be considered, *any one of the criteria* was sufficient to support a finding of unfitness (*People* v. *Chi Ko Wong, supra,* 18 Cal.3d 698, 717, fn. 15; rule 1348(b), Cal. Rules of Court). And under 1979 legislation, the court must find the minor fit and proper under *each and every one of the criteria* (1979 amendment to § 707, subd. (c)).

The evidence clearly does not overcome the presumption of unfitness on this criterion.

The evidence shows that the minor, nearing his 18th birthday, was, at the time of the assault, being continued on probation after having violated a previous probationary order. He made a vicious and unprovoked knife attack upon unarmed citizens peacefully returning to their automobile after a Christmas Eve dinner at a restaurant. He stabbed and attempted to stab victims in the back when they attempted to escape, and he inflicted injuries which could have caused death. No evidence of "extenuating or mitigating circumstances" having been produced to rebut the seriousness and gravity of the crime, the court was required, *under this criterion alone,* to make a finding of unfitness.[18] The evidence

---

[18]Under the evidence before the court, it would be difficult to characterize the minor's course of conduct as self-defense (*People* v. *Morrison, supra,* 110 Cal.App.3d 476, 485).

also shows a long standing pattern of refusal to accept the authority of parents, teachers, probation officers, counselors, and finally of court orders. Upon evaluation of each and every one of the criteria enumerated in section 707, subdivision (c), in light of the presumption, we must conclude that the evidence does not support the court's findings as to any one of the criteria.

Let a peremptory writ of mandate issue compelling respondent court to vacate its order of January 30, 1981, and to enter an order finding the minor not a fit and proper subject to be dealt with under the Juvenile Court Law.

Rouse, J., and Smith, J., concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied July 8, 1981.