Filed 12/22/25  In re D.L. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re D.L., a Person Coming Under the Juvenile Court Law. | 2d Juv. Crim. No. B342123 (Super. Ct. No. VJ46384) (Los Angeles County) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>D.L.,<br><br>    Defendant and Appellant. | |

D.L. appeals an order transferring him from the juvenile court to an adult court of criminal jurisdiction.  (Welf. & Inst. Code,[1] § 707.)  He contends there was insufficient evidence to support the transfer order.  We affirm.

---

[1] Further unspecified statutory references are to the Welfare and Institutions Code.

FACTS AND PROCEDURAL HISTORY

In September 2020, the prosecution filed a section 602 petition alleging that 16-year-old D.L. committed two counts of murder (Pen. Code, § 187, subd. (a)) and one count of attempted willful, deliberate, and premeditated murder. (Pen. Code, §§ 187, subd. (a), 664, subd. (a).) According to the probation report, D.L. was a member of the Bay 13 gang. He was walking on a sidewalk when he was approached by a car occupied by Armando Avalos and Belen Alzaga, who were members of the Elm Street Watts gang. Avalos pulled the car up next to D.L. and asked, "Where you from?" D.L. pulled out a firearm and fired multiple shots into the car. One shot fatally struck Avalos in the head.

About an hour later, in a separate incident, D.L. fatally shot Armando Calderon in the face outside Calderon's home. The home was about one mile from the scene of the previous shooting.

By the time of the transfer hearing, D.L. had spent four years in juvenile hall, from 2020 to 2024. At the hearing, the prosecution presented as evidence detention observation reports, which compiled information from various staff members regarding D.L.'s behavior in juvenile hall, a June 2019 pre-plea probation report, and two camp reports from August and October 2019, reflecting D.L.'s prior delinquent history — D.L. had two prior sustained petitions for a 2018 vandalism and a 2019 attempted robbery. This evidence also showed the services previously provided to D.L. and his progress and participation in such services. Several probation officers and family members of the victims also testified.

In support of his defense, D.L. submitted certificates reflecting his participation in and completion of various

programs. He also received a high school diploma and completed college courses. Psychologist Dr. Vela Gonzalez testified as an expert witness on D.L.'s behalf. She evaluated him in 2021 and noted that D.L. suffered from trauma as a child due to his exposure to gang violence and that he had a history of substance abuse. She opined that D.L. could be rehabilitated within five years (when D.L. reaches the age of 25 and the juvenile court's jurisdiction expires).

The juvenile court found clear and convincing evidence that D.L. was not amenable to rehabilitation while under its jurisdiction. In so ruling, the court considered all five transfer criteria under section 707, subdivision (a)(3)(A) through (E), and found the prosecution met their burden with respect to four criteria — whether D.L. could be rehabilitated prior to the expiration of the juvenile court's jurisdiction, his previous delinquent history, his performance on previous attempts to rehabilitate, and the gravity of the alleged offenses.

## DISCUSSION

D.L. contends the transfer order must be reversed because there was insufficient evidence he was not amenable to rehabilitation under the juvenile court's jurisdiction. We disagree.

### *Substantial Evidence*

Section 707, subdivision (a)(3) provides that in order to "find that the minor should be transferred to a court of criminal jurisdiction, the court shall find by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court.

In making its decision, the court shall consider the following five criteria: (A) "The degree of criminal sophistication

3

exhibited by the minor"; (B) "Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction"; (C) "The minor's previous delinquent history"; (D) Success of previous attempts by the juvenile court to rehabilitate the minor"; and (E) "The circumstances and gravity of the offense alleged in the petition to have been committed by the minor." (§ 707, subd. (a)(3)(A)-(E).)

"If the court orders a transfer of jurisdiction, the court shall recite the basis for its decision in an order entered upon the minutes, which shall include the reasons supporting the court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (§ 707, subd. (a)(3).)

The minor's amenability to rehabilitation under the juvenile court's jurisdiction is "the ultimate question for the court to decide." (*In re E.P.* (2023) 89 Cal.App.5th 409, 416.) In deciding that question, the juvenile court shall analyze the five criteria set forth in section 707, subdivision (a)(3) "focused through the lens of amenability to rehabilitation." (*In re S.S.* (2023) 89 Cal.App.5th 1277, 1288 (*S.S.*), superseded by statute on other grounds as stated in *In re J.M.* (2024) 103 Cal.App.5th 745, at pp. 751-753, *E.P., supra*, Cal.App.5th at p. 416.)

We review the juvenile court's order transferring a case to an adult court of criminal jurisdiction for abuse of discretion. (*People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 680.) The juvenile court's findings as to the five fitness criteria under section 707, subdivision (a)(3)(A) through (E), are factual findings that we review for substantial evidence. (*Id.* at p. 681.) We also review for substantial evidence the court's ultimate finding of whether the minor was amenable to rehabilitation while under the juvenile court's jurisdiction. (*In re Miguel R.* (2024) 100

4

Cal.App.5th 152, 165 (*Miguel R.*).) The substantial evidence standard is deferential, and we review the record most favorably to the judgment to determine whether there is substantial evidence from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof. (*Ibid.*; *In re Jerry M.* (1997) 59 Cal.App.4th 289, 298 (*Jerry M.*).) We give due deference to how the trier of fact evaluated the credibility of witnesses, resolved conflicts in the evidence, and drew reasonable inferences from the evidence. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1005.)

The juvenile court did not abuse its discretion in ordering the transfer of D.L.'s case to adult criminal court. In determining D.L. was not amenable to rehabilitation while under the juvenile court's jurisdiction, the court based its ruling on four of the five criteria weighing in favor of transfer. Substantial evidence supports these findings.

First, when evaluating the circumstances and gravity of the alleged offenses, the juvenile court "shall give weight to any relevant factor, including, but not limited to, the actual behavior of the person, the mental state of the person, the person's degree of involvement in the crime, the level of harm actually caused by the person, and the person's mental and emotional development." (§ 707, subd. (a)(3)(E)(ii).)

Here, evidence, including the incident reports and photographs, showed that D.L. shot multiple times into the car occupied by Avalos and Alzaga. Avalos was fatally shot in the head. Within hours of the first incident, D.L. fatally shot Calderon in the face. There was no evidence that any other person was involved in these murders or that the victims were armed. As to D.L.'s mental and emotional development, D.L. was

5

almost 17 years old at the time of the offenses and there was no evidence of developmental delays. As the juvenile court observed, the level of harm was "immeasurable" — two lives were lost and several family members of the victims testified regarding the impacts the murders had on them and their families. Substantial evidence supports the finding that the circumstances and gravity of the alleged offenses weighed in favor of transfer.

Second, when evaluating the minor's previous delinquent history, "the juvenile court shall give weight to any relevant factor, including, but not limited to, the seriousness of the minor's previous delinquent history and the effect of the minor's family and community environment and childhood trauma on the minor's previous delinquent behavior." (§ 707, subd. (a)(3)(C)(ii).)

Here, the October 2024 probation report, a June 2019 pre-plea probation report, and two camp progress reports from 2019, established that D.L. had previous sustained petitions for vandalism in July 2018 when he was 14 years old and attempted robbery in March 2019 when he was 15 years old. He was placed home on probation for the vandalism offense and placed in a community camp program for the attempted robbery offense. Less than a year after his camp program, D.L. committed the instant murders and attempted murder. D.L.'s delinquency history reflects that his previous offenses for vandalism and attempted robbery were close in time, occurring within one year of each other. And, his current offenses occurred less than two years after the attempted robbery. The evidence reflects a pattern of escalating criminal behavior, despite D.L. being under probation supervision and receiving services for his past offenses.

Moreover, the detention observation reports and probation officers' testimonies regarding D.L.'s behavior in juvenile hall

6

further supports his delinquent history weighed in favor of transfer. (*D.C. v. Superior Court* (2021) 71 Cal.App.5th 441, 453 [conduct, including the minor's behavior in school, occurring after the alleged offense was relevant to evaluating the minor's delinquent history].) Some of the detention observation reports documented numerous instances of violence, including D.L. fighting other youths in juvenile hall, assaulting a probation officer, and threatening a probation officer. There were also numerous instances of D.L. possessing contraband including vape pens or cartridges and appearing under the influence. Additionally, probation officers Kathleen Iwoha and Carla Beltran, who prepared detention observation reports, testified about D.L.'s behavior as documented by the reports and noted several instances of possession or use of illegal contraband and aggressive behavior, including assault. In sum, the evidence was sufficient to support D.L.'s previous delinquent history weighed in favor of transfer.

D.L. contends the juvenile court ignored all evidence favorable to him, including evidence regarding his family, community environment and childhood trauma. But, the record reflects the court was aware of such evidence. The court expressly acknowledged it when considering the criminal sophistication criterion and ultimately found that that criterion weighed against transfer. We presume the court properly weighed all relevant factors both favorable and unfavorable to D.L. when evaluating his previous delinquent history. (*In re Julian R.* (2009) 47 Cal.4th 487, 499.)

D.L. also contends the detention observation reports should be given little weight and are insufficient to support his transfer because none of the testifying witnesses had personal first-hand

knowledge of the information contained in the reports.  We are unpersuaded.  The detention observation reports contained observations by various probation officers regarding D.L.'s behavior in juvenile hall.  Such evidence is admissible in a transfer hearing.  (See *People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 717-719, overruled on other grounds in *People v. Green* (1980) 27 Cal. 3d 1, 33-34; *People v. Superior Court (Steven S.)* (1981) 119 Cal.App.3d 162, 173.)  D.L. had the opportunity to present witnesses to counteract any portion of the reports to demonstrate inaccuracies therein, but he did not do so.  (*Steven S.*, at p. 173.)

Third, when evaluating the previous attempts by the juvenile court to rehabilitate a minor, "the juvenile court shall give weight to any relevant factor, including, but not limited to, the adequacy of the services previously provided to address the minor's needs."  (§ 707, subd. (a)(3)(D)(ii).)

Here, D.L. received services in connection with his two past offenses.  While he was home on probation, D.L. was referred to family functional therapy, but was terminated because of his failure to participate.  During camp placement, D.L. participated in services.  The camp progress reports reflect that D.L. exhibited generally positive behavior in camp.  He participated in schooling, individual counseling, a 14-week dialectical behavior therapy, and completed a 10-week substance abuse course.  The juvenile court found he received adequate services — a finding that is undisputed here.  Although D.L. exhibited advancement in education, therapy, and other services while in camp, he committed the current offenses about 8 months after release from camp.  His re-offense sufficiently supports that his previous

8

attempts to rehabilitate weighed in favor of transfer, as D.L. continued to commit crime and engage in violent behavior.

Fourth, when evaluating whether a minor could be rehabilitated prior to the expiration of the juvenile court's jurisdiction, "the juvenile court shall give weight to any relevant factor, including, but not limited to, the minor's potential to grow and mature." (§ 707, subd. (a)(3)(B)(ii).)

The focus "is whether there is enough time to rehabilitate the minor while the minor is still eligible to remain under juvenile court jurisdiction." (*Miguel R.*, *supra*, 100 Cal.App.5th at p. 166.)

Here, this case was somewhat unique because there were four years of juvenile hall records due to the procedural posture of this case — the petition was filed in September 2020, but the transfer hearing did not occur until October 2024. There were several detention observation reports spanning the four years D.L. was in juvenile hall, which reflected that D.L. continued to exhibit violent behavior, possessed contraband, and was under the influence throughout his time in juvenile hall. (See *ante*, at p. 7.) The most recent detention observation report from October 2024 reflected that D.L. failed to follow instructions. He was defiant and disrespectful to a probation officer and threatened to cause physical harm or death to them. Furthermore, the probation report recommended transfer, in part, because D.L. had opportunities to rehabilitate when he was home on probation and in community camp placement, but "it does not appear that court intervention has changed his ways and he does not appear receptive to doing better. He continues to receive services, but still has moments of misbehavior in juvenile hall."

D.L. contends the juvenile court "downplayed" his progress and Dr. Gonzalez's testimony. To the contrary, the court acknowledged D.L. received numerous certificates for his achievements in programs, graduated from high school, and continued college educational courses. It also acknowledged Dr. Gonzalez's testimony and her opinion that D.L. could be rehabilitated under the juvenile court's jurisdiction. But, the juvenile court was not required to adopt Dr. Gonzalez's testimony. (See *In re Alejandro G.* (2012) 205 Cal.App.4th 472, 480; *In re J.S.* (2024) 105 Cal.App.5th 205, 212.). On appeal, we do not reweigh evidence or substitute our judgment for that of the finder of fact. (*Jerry M.*, *supra*, 59 Cal.App.4th at p. 298.)

D.L. contends the evidence was insufficient because the prosecution did not present expert testimony. Citing *S.S.*, *supra*, 89 Cal.App.5th at page 1291, D.L. asserts that "expert testimony will likely be necessary for a complete analysis" on this criterion. While we acknowledge that expert testimony can generally assist a juvenile court in assessing this criterion, the evidence here was nonetheless sufficient because the juvenile court had the benefit of considering D.L.'s growth, maturity, and progress in the four years he was in juvenile hall during which time he received rehabilitative services.

In weighing evidence favorable to D.L. against other evidence, the juvenile court found "doubt that [D.L.] will grow and mature at a rate where he will be rehabilitated before the expiration of the juvenile court's jurisdiction." The court stated that its conclusion was "based upon the rate of growth and maturity that we have seen over the years, especially during his time in the hall, which is close to four years. And that's exactly how much time left the court has in juvenile jurisdiction." We

10

conclude substantial evidence supports the court's finding that this criterion weighed in favor of transfer.

Lastly, we conclude that substantial evidence supports the ultimate finding that D.L. was not amenable to rehabilitation under the limited time of the juvenile court's jurisdiction based on the same substantial evidence supporting the four fitness criteria weighing in favor of transfer. We conclude the juvenile court did not abuse its discretion in transferring the matter to adult criminal court.

*Minute Order*

D.L. also contends the ruling needs to be set aside because the juvenile court's minute order does not adequately explain the reasons for the transfer of jurisdiction pursuant to section 707, subdivision (a)(3).

The juvenile court must "recite the basis for its decision in an order entered upon the minutes, which shall include the reasons supporting the court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (§ 707, subd. (a)(3).) A "failure to provide an adequate statement of reasons for a transfer decision" will not require reversal if such error was harmless beyond a reasonable doubt. (*C.S. v. Superior Court* (2018) 29 Cal.App.5th 1009, 1036 (*C.S.*); *Chapman v. California* (1967) 386 U.S. 18.)

We conclude there is no basis for reversal. Here, the minute order reflects that the juvenile court based its decision on the four aforementioned criteria. The reporter's transcript of the court's ruling reflects the court articulated its "evaluative process" as to each criterion, including the weighing of evidence, identification of specific facts supporting the decision, and the discussion of all relevant factors. (*C.S.*, *supra*, 29 Cal.App.5th at

11

p. 1029.)  The judge's analysis was thorough.  Because of this, we can discern the juvenile court's analysis and reasons for its ruling.  Any error in failing to provide a more detailed rationale in the minute order itself is harmless beyond a reasonable doubt.

DISPOSITION

The transfer order pursuant to section 707 is affirmed.

NOT TO BE PUBLISHED.


HIPPACH, J.*

We concur:


YEGAN, Acting P. J.


CODY, J.

---

* Judge of the Santa Barbara Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Sharonda P. Bradford, Judge

Superior Court County of Los Angeles

_____

Richard D. Rome, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Irvi and Theresa A. Patterson, Deputy Attorneys General, for Plaintiff and Respondent.