[No. A027598. First Dist., Div. Two. Mar. 18, 1985.]

EDSEL P., a Minor, etc., Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Nella Bertin for Petitioner.

John K. Van de Kamp, Attorney General, Thomas A. Brady, Linda Ludlow and Cynthia Choy Ong, Deputy Attorneys General, for Real Party in Interest.

## Opinion

**KLINE, P. J.**—This case presents a due process challenge to application of the statutory presumption (Welf. & Inst. Code, § 707, subd. (c))[1] that a minor alleged to have committed any of the serious offenses listed in subdivision (b) of section 707 is not a fit and proper subject to be dealt with under the Juvenile Court Law. It is specifically asserted that when the minor challenges the sufficiency of the evidence that he committed a listed offense the presumption cannot be applied unless the prosecutor first establishes a prima facie case.

Petitioner, Edsel P., was 17 years old at the time of the commission of the offenses which led to the filing of a petition in the Juvenile Court of Contra Costa County on May 2, 1984. The petition, which alleged that Edsel came within the provisions of section 602, charged him with two counts of attempted murder (Pen. Code, §§ 664/187), and one count of assault with a firearm on a peace officer (Pen. Code, § 245, subd. (c).) It was further alleged that during the commission of the offense listed in count I, petitioner was armed with a firearm within the meaning of Penal Code section 12022, subdivision (a), and that during the commission of the offenses listed in counts II and III, he used a firearm within the meaning of Penal Code section 12022.5.

On May 4, 1984, the People noticed a motion for a fitness hearing pursuant to section 707, subdivision (c), alleging that petitioner had been charged with criminal offenses among those enumerated in subdivision (b) of that section, that he was not a fit and proper subject to be dealt with under Juvenile Court Law, and that he should therefore be tried as an adult.

Prior to the fitness hearing, a detention hearing was held on May 7, 1984. Neither of the alleged victims were present and the prosecution did not offer any other witnesses. After considering the views of the district attorney and defense counsel, the referee ordered petitioner detained pending the fitness hearing. The sole evidentiary basis for the order was a "Detention Warrant Information Sheet" prepared by the probation department, which was the only evidence received by the referee. As set forth in this one-page document, the probation department recommended that the minor be detained as it appeared there was "[a]n immediate and urgent necessity for the protection of the minor" and "a reasonable necessity for the protection of the person or property of another."[2]

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]The quoted phrases, which were checked off on the form information sheet, track the statutory language of sections 635 and 636.

On May 17, 1984, petitioner filed an application for a detention rehearing alleging that the standards for detention of juveniles prescribed by section 635 had not been met,[3] that he had been denied his right to confront and cross-examine the probation and police officers who prepared reports on the case, and that the hearsay statements set forth in the reports were unauthenticated and unreliable. On the same day, petitioner filed a request for a probable cause hearing claiming that the prosecution had overcharged the case by alleging violations of offenses listed in section 707, subdivision (b), that were unjustified by the facts, and that this was done merely to trigger the presumption of unfitness prescribed in section 707, subdivision (c).[4]

Petitioner maintained in his motion papers that this improper use of the statutory presumption denied him due process of law.

Hearings on petitioner's requests for a detention rehearing and a probable cause hearing were consolidated with the fitness hearing conducted by the juvenile court judge on May 22, 1984. At this hearing the court first addressed petitioner's request for a probable cause hearing. The court summed up petitioner's position as follows: "What [defense counsel] is alleging, I believe, is that there is no supporting basis whatsoever for the charges. The charges raise the presumption of unfitness, and the presumption is improperly raised, because the charge has no support." In response, the district attorney maintained that "there is absolutely no supporting law for this type of a [probable cause] motion. There is no statute that indicates that this is a proper procedure, and there is no case law that is cited by the moving party to have this type of a hearing, . . . it is an attack on the executive authority of the District Attorney and his charging discretion, and there is no law to support this at all. All that has happened in the moving papers is that [defense counsel] has made an argument that she believes the charges are not supported, but the burden is on her to show the charges were not supported . . . ." In answer to this argument, the court noted that "[the] claim is not that section 707 requires a probable-cause determination, but

---

[3]Specifically, petitioner claimed that the information report relied upon by the referee was both factually inaccurate and legally inadequate, citing, for the latter proposition, *In re Dennis H.* (1971) 19 Cal.App.3d 350 [96 Cal.Rptr. 791]. Petitioner claimed as well that no evidence was presented or existed that there was an immediate and urgent necessity for his protection or reasonable necessity for the person or property of another, and that detention was therefore inconsistent with *In re William M.* (1970) 3 Cal.3d 16 [89 Cal.Rptr. 33, 473 P.2d 737].

[4]The motions for a detention rehearing and a probable cause hearing were duplicative. Section 637, which specifically authorizes detention rehearings, provides in part that if the minor requests evidence of the prima facie case a detention rehearing shall be held for that purpose within three judicial days and that "[i]f the prima facie case is not established, the minor shall be released from detention." In other words, petitioner's motion for a probable cause hearing added nothing to his motion for a detention rehearing, which in itself represented a request for evidence of the prima facie case.

that the section would be unconstitutional without such a requirement?'' After considering further argument on the issue, the court finally stated, ''I am not persuaded on this record that due process requires a probable-cause hearing concurrent with or prior to the fitness hearing in order to save section 707 from being declared unconstitutional; and, accordingly, the motion for a probable-cause hearing is denied.'' Reserving judgment on the remaining request for a detention rehearing, the court thereupon commenced the fitness hearing.

Four witnesses testified at the fitness hearing: Richard Birss, the probation officer assigned the case; Dr. Martin Fink, a licensed psychologist who testified for the minor, and the minor's mother and father.

The probation report, which was received in evidence, describes the circumstances of the offenses alleged to have been committed by petitioner essentially as follows:

At approximately 1 a.m. on the morning of May 1, 1984, Lelinda Garcia phoned the Contra Costa Sheriff's office reporting a prowler at her home in Rodeo. She described the prowler as an 18-year-old Filipino and said he had threatened her life. Deputy Sheriffs Nunes, Olivera and Gray arrived at the scene in about three minutes. Shortly thereafter, Deputy Nunes noticed what appeared to be a minor sitting in a Chevette parked nearby. The deputy approached the car, saw the minor fumbling with an object, and asked him what he was doing. Receiving no response, Nunes then saw a shotgun. When the minor failed to drop the weapon as directed, Deputy Nunes drew his service revolver and fired a shot, grazing the minor's right temple. Apparently, as he was struck, the minor fired one round from the shotgun, which inflicted no harm.

The minor was taken by ambulance to the hospital and given *Miranda* warnings en route by Deputy Gray. According to the probation report, Edsel waived his rights and stated to the deputy that he had been having an affair with Lelinda Garcia and that her husband, Peter, had learned of the relationship and threatened the minor. Edsel told the deputy that ''he had to get Peter before Peter got him.'' According to the report, ''[Edsel] stated that he took his brother's shotgun and drove his parents' car to the 300 block of 4th Street. [He] stated that he exited the car with the loaded shotgun and checked Linda's house. He said he was looking for an open window. [Edsel] was unable to get inside so he knocked on Linda's front door. [He] indicated that when he was confronted by Deputy Nunes he ([the minor]) was going to kill the officer, but the officer got the first shot. [Edsel] further stated that he had every intention of killing Peter Garcia if he could get inside the house.''

The probation report also discloses that a "possible suicide letter" was found in the minor's pocket which stated as follows: "'Dear Mom, Dad and the family: I love you all, I'm sorry I did this because I have too much problems in life. I don't want to give you any more problems, I love you all and I'm very sorry. Love Edsel.'"

Lelinda Garcia later stated to investigating detectives that at the time she contacted the sheriff's office she did not know the prowler was Edsel. She said she met Edsel the previous October and started seeing him in January. Denying that her husband knew about Edsel, she stated that Edsel had recently threatened her by saying that if she did not leave her husband, he (Edsel) would "get him."

Probation Officer Birss states in his report that he "would not describe the offense as one with a great degree of criminal sophistication, but one where the minor used extremely unsound judgement [*sic*], was totally unrealistic, and bordered on lunacy. The minor armed himself with a shotgun, with a great degree of preparation, and he placed himself and others in great danger. In Edsel's own admission he indicated that he planned to kill [Peter] Garcia initially, and later the deputy sheriff when he approached Edsel in the Chevette. Edsel's letter to his parents found on his person could be interpreted as a death wish, which Edsel attempted to carry out by drawing the shotgun towards the sheriff's deputy."

The probation officer testified that all of the statements of fact he set forth in the probation report were made exclusively in reliance on unspecified police reports, and that he had not interviewed the victims or any other witnesses and had no independent knowledge of the events described. However, with respect to other considerations relevant to the determination of fitness, the probation officer did interview Edsel, his parents, and his older brother and sister. As a result of these interviews the probation report observed that petitioner came from a close-knit religious family, had no prior criminal record, attends San Francisco City College and works part time in the family business, "did not appear to be a 'macho' individual, and seemed to be a very mild person." Despite these observations, the probation report concluded with the recommendation that petitioner be declared an unfit person to be dealt with under the Juvenile Court Law. As stated in the report: "This deputy believes that the events, in themselves, are sufficient to support a finding that the minor is not a fit and proper subject to be dealt with under the provisions of the juvenile court law. Edsel's admission to the police was that he planned to kill the sheriff's deputy, and the only reason he did not do it was because the sheriff's deputy fired first. This deputy believes that if Edsel wanted to exit the vehicle without posing any threat

to Deputy Nunes, the most reasonable approach would be to exit the vehicle without the gun. This deputy believes that Edsel's behavior and admissions, in and of themselves, indicate such a gravity of an offense that this subject is inappropriate to be treated as a juvenile. This evaluation is made considering the facts that the offense lacks criminal sophistication and the subject has no known prior history of delinquency. The subject probably could be rehabilitated prior to the expiration of the juvenile court jurisdiction, but this does not outweigh the gravity of the offense."

In his testimony, probation officer Birss reiterated that his recommendation of unfitness was based solely on the seriousness of the alleged offenses described in the police reports. He also reconfirmed his view that if the minor was determined fit to be treated as a juvenile he could be rehabilitated prior to the expiration of the juvenile court's jurisdiction because of his favorable background and the absence of any prior criminal history.

Dr. Fink, the psychologist called by petitioner, testified that he had reviewed the report prepared by the probation officer, the police reports, interviewed and tested petitioner on two occasions for a total of six hours and also interviewed petitioner's parents. Dr. Fink did not speak with either of the victims, or with petitioner's counselors at juvenile hall. In his opinion, petitioner was immature, scored at the lower end of the normal range of intelligence, and was not emancipated in any way from his family. The psychologist concluded that petitioner was amenable to treatment in the juvenile court and that a "successful outcome was more likely in the juvenile system."

Petitioner's parents testified that petitioner lived at home, was a student, and was economically dependent on them.

At the conclusion of the hearing, after reviewing the transcript of the detention hearing on May 7, the court denied petitioner's motion for a detention rehearing and found petitioner unfit for treatment as a juvenile, stating the belief that due to the "circumstances and gravity of the offense alleged to have been committed," the minor "has not met his burden of proof" to overcome the presumption of unfitness specified by section 707, subdivision (c).

On May 24, 1984, a complaint was filed in municipal court charging petitioner with two counts of attempted murder (Pen. Code, §§ 664/187.) It was also alleged that petitioner was armed with a firearm within the meaning of Penal Code section 12022, subdivision (a) in the commission of the offense listed in count I, and used a firearm within the meaning of Penal Code section 12022.5 in the commission of the offense listed in count II. On May 25, 1984, petitioner was arraigned in municipal court. On June 14,

1984, petitioner filed a petition for writ of mandate with this court pursuant to rule 1348(k) of the California Rules of Court. (See also *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 714 [135 Cal.Rptr. 392, 557 P.2d 976].) We stayed all proceedings in the municipal court, except discovery, pending our determination of this petition and thereafter issued an order to show cause before this court why the relief prayed for should not be granted.

I

At the outset of our analysis it is useful to summarize the provisions of subdivisions (a) and (c) of section 707, which specify alternative methods of determining fitness. Subdivision (a) applies to cases in which the minor is alleged to have violated any criminal statute or ordinance *except* the serious violations listed in subdivision (b). When, in such cases, the petitioner files an appropriate motion the juvenile court "shall cause the probation officer to investigate and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness. Following submission and consideration of the report, and of any other relevant evidence which the petitioner or the minor wish to submit, the juvenile court may find that the minor is not a fit and proper subject to be dealt with under the juvenile law . . . ." (§ 707, subd. (a).) Such a finding of unfitness may be based on any one or a combination of the following five criteria:

"(1) The degree of criminal sophistication exhibited by the minor.

"(2) Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction.

"(3) The minor's previous delinquent history.

"(4) Success of previous attempts by the juvenile court to rehabilitate the minor.

"(5) The circumstances and gravity of the offense alleged to have been committed by the minor." (*Ibid.*)

Subdivision (c) of section 707, which applies to cases in which the minor *is* alleged to have violated any of the serious offenses listed in subdivision (b), is identical to subdivision (a) in all respects save two: first, "the minor shall be presumed to be not a fit and proper subject to be dealt with under the juvenile court law," and, second, the minor can rebut the presumption and be determined fit if the court concludes that the minor would be ame-

nable to treatment as a juvenile "under each and every one" (*not* "any one") of the five criteria set forth above. (§ 707, subd. (c).)

The statutory presumption of subdivision (c) imposes upon the minor the burden to prove fitness, whereas under subdivision (a) the burden is on the prosecutor, representing the petitioning party, to show unfitness.

It warrants emphasis here that, strictly speaking, the issue presented in this case does not involve the prosecutorial or defense burden to show unfitness or fitness. Petitioner in effect concedes that, if the presumption applies, the burden is on him to show fitness. However, he raises the threshold question whether, as a condition of applying the presumption and thereby shifting the burden to him on the question of fitness, the prosecutor may first be required to establish a prima facie case that the criminal violation that gives rise to the presumption was actually committed.

## II

The extent of the procedural safeguards that must be provided at a hearing to determine whether a minor will be tried as an adult or as a juvenile was addressed by the United States Supreme Court in *Kent* v. *United States* (1966) 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045]. The petitioner in *Kent* was arrested at the age of 16 in connection with charges of housebreaking, robbery and rape. As a juvenile he was subjected to the exclusive jurisdiction of the District of Columbia Juvenile Court unless that court, after "'full investigation,'" should waive jurisdiction over him and remit him for trial to the United States District Court for the District of Columbia. The petitioner filed a motion in the juvenile court for a hearing on the question of waiver. The juvenile court did not rule on this motion but entered an order waiving jurisdiction, with the recitation that this was done after the required "'full investigation.'" On appeal after conviction as an adult, petitioner raised, among other issues, the validity of the juvenile court's waiver of jurisdiction. In holding the waiver of jurisdiction invalid, the Supreme Court first emphasized the "'critically important'" nature of the question whether a minor will be deprived of the special protections and provisions of the juvenile law. (*Id.,* at p. 553 [16 L.Ed.2d at p. 93], citing *Watkins* v. *United States* (D.C. Cir. 1964) 343 F.2d 278 and *Black* v. *United States* (D.C. Cir. 1965) 355 F.2d 104.) In *Kent* the consequences of being tried as an adult included confinement with adults and exposure to the possibility of a death sentence instead of treatment for a maximum of 5 years, until the minor reached 21. Without considering whether, on the merits, Kent should have been tried as an adult, the court declared that "there is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, without effec-

tive assistance of counsel, without a statement of reasons. It is inconceivable that a court of justice dealing with adults, with respect to a similar issue, would proceed in this manner. It would be extraordinary if society's special concern for children . . . permitted this procedure." (*Id.,* at p. 554 [16 L.Ed.2d at p. 93].)

While *Kent* was decided on the basis of requirements set forth in the District of Columbia statute, Justice Fortas, speaking for the majority, stated that the court's conclusion was based upon a reading of that statute "in the context of constitutional principles relating to due process and the assistance of counsel." (*Id.,* at p. 557, fn. omitted [16 L.Ed.2d at p. 95].) He added that the statutory scheme permitting trial as an adult assumes procedural regularity sufficient "to satisfy the basic requirements of due process and fairness." (*Id.,* at p. 553 [16 L.Ed.2d at p. 93], citing *Green* v. *United States* (D.C. Cir. 1962) 308 F.2d 303.)[5]

Our Supreme Court, which has also recognized the serious consequences of depriving a minor of the right to be tried as a juvenile (*Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802, 810 [210 Cal.Rptr. 204, 693 P.2d 789]),[6] has relied on *Kent* for the proposition that the process of certifying a minor for trial as an adult "must thus be attended by minimum requirements of due process and fair treatment as dictated by the Fourteenth Amendment." (*People* v. *Chi Ko Wong, supra,* 18 Cal.3d 698, 718, citing *Kent* v. *United States, supra,* 383 U.S. at pp. 560-562 [16 L.Ed.2d at pp. 96-98].)

■ However, the principle that fitness hearings must comport with the basic requirements of due process does not mean that strict rules of proce-

---

[5]In *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], the Supreme Court held that a juvenile has a right to notice of charges, to counsel, to confrontation and cross-examination, and to the privilege against self-incrimination. Referring to *Kent,* the court stated in *Gault* that "[a]lthough our decision turned upon the language of the statute, we emphasized the necessity that 'the basic requirements of due process and fairness' be satisfied in such proceedings." (*Id.,* at p. 12, fn. omitted [18 L.Ed.2d at p. 538].) Accordingly, the court noted, while *Kent* and other juvenile cases (*Haley* v. *Ohio* (1948) 332 U.S. 596 [92 L.Ed. 224, 68 S.Ct. 302] and *Gallego* v. *Colorado* (1962) 370 U.S. 49 [8 L.Ed.2d 325, 82 S.Ct. 1209, 87 A.L.R.3d 614]) relate only to restricted aspects of the subject, they indicate that "neither the Fourteenth Amendment nor the Bill of Rights is for adults alone." (*Id.,* at p. 13.) For expositions of the constitutional dimensions of the decision in *Kent* see Paulsen, *Kent v. United States (86 Sup.Ct. 1045): The Constitutional Context of Juvenile Cases,* 1966 Sup.Ct.Rev. 167, and Schornhorst, *The Waiver of Juvenile Court Jurisdiction: Kent (Kent v. U.S. 86 Sup.Ct. 1045) Revisited* (1968) 43 Ind.L.J. 583.

[6]In *Ramona R.* the court observed that although "[t]he result of a fitness hearing is not a final adjudication of guilt . . . the certification of a juvenile offender to an adult court has been accurately characterized as 'the worst punishment the juvenile system is empowered to inflict.'" (*Id.,* at p. 810, quoting Note, *Separating the Criminal from the Delinquent: Due Process in California Procedure* (1967) 40 So.Cal.L.Rev. 158, 162.)

dure and evidence necessarily apply. As pointed out in *People* v. *Chi Ko Wong, supra,* a fitness hearing does not involve an adjudication of guilt and does not directly result in confinement or other punishment; its sole purpose "is to determine 'whether [the] best interest of the child and of society would be served by the retention of the juvenile court authority over him or whether the juvenile, under all the circumstances, should be transferred to be tried as an adult.'" (*Id.,* at p. 718, quoting *State* v. *Piche* (1968) 74 Wn.2d 9, 14 [442 P.2d 632].) This purpose, the court declared, "may best be effectuated by the sound exercise of the juvenile court judge's discretion at an informal hearing, limited of course by the general requirements of due process and fair treatment, but not governed by the strict rules of procedure and evidence applicable at either a criminal trial or at a juvenile court delinquency hearing." (*Id.,* at pp. 718-719.)

In *People* v. *Superior Court (Steven S.)* (1981) 119 Cal.App.3d 162 [173 Cal.Rptr. 788, 22 A.L.R.4th 1140], this court interpreted *Chi Ko Wong* to authorize the receipt in evidence of a probation report at fitness hearings despite the fact that such reports necessarily contain hearsay and extrajudicial material. (*Id.,* at p. 173.) Thus, we stated in *Steven S.* that "[s]tatements made by a juvenile to a probation officer may be admitted and considered in hearings on the issues of detention and fitness for juvenile treatment, although such statements are not admissible as substantive evidence, or for impeachment, in any subsequent proceeding to determine criminal guilt. [Citation.]" (*Ibid.,* fn. omitted.)

 fn. ██ Unlike *Chi Ko Wong* and most of the other cases discussing the due process requirements that must be met at fitness hearings, *Steven S.* was decided after the 1979 amendments to section 707 (Stats. 1979, ch. 944, § 19, p. 3263; Stats. 1979, ch. 1177, § 2, p. 4600) and involved a situation, similar in many respects to that presented here, in which the minor was charged with offenses enumerated in subdivision (b) of section 707 and therefore subject to the statutory presumption of unfitness. Without the benefit of any prior judicial decision on the subject, we were called upon in *Steven S.* to define the effect of the presumption with respect to the criteria specified in the statute. After assaying pertinent authority regarding the effect of a presumption affecting the burden of proof (see Evid. Code, §§ 605, 606), we concluded that the presumption of section 707, subdivision (c), "places upon the minor the burden of proof as to the nonexistence of the presumed fact . . . and that the minor's burden of proof requires proof by a preponderance of the evidence (Evid. Code, § 115)." (*Id.,* at p. 177.)[7]

---

[7]Stating the proposition more specifically, we indicated that, pursuant to the five criteria specified in the statute, the minor must in this manner prove (1) that he does not exhibit a high degree of criminal sophistication; (2) that he can be rehabilitated prior to the expiration of the juvenile court's jurisdiction; (3) that he has no previous delinquent history or no

After evaluating the facts in light of the five statutory criteria, we held that the evidence did not support the juvenile court's findings favorable to the minor as to any one of the criteria and did not overcome the presumption of the minor's unfitness to be dealt with under the Juvenile Court Law.

The Attorney General maintains that *Steven S.* is dispositive of the instant case because, as in *Steven S.,* the evidence presented against petitioner at the fitness hearing was "overwhelming" and in no event would he be able to overcome "[t]he circumstances and gravity of the offenses alleged to have been committed by [him]." The Attorney General argues, in other words, that even if petitioner has overcome the presumption that he is unamenable to the care, treatment, and training program available through the facilities of the juvenile court based upon an evaluation of the first four of the five criteria specified in subdivision (c) of section 707, he cannot meet the fifth criteria—i.e., "the circumstances and gravity of the offenses alleged to have been committed by the minor"—because it is indisputable that the offenses alleged against him are among the grave offenses listed in subdivision (b) of the statute. If we were to accept this reasoning, which we do not, all fitness hearings involving a minor charged with any of the offenses enumerated in subdivision (b) would reach a foregone conclusion and thereby be deprived of purpose. ▮ Such a result is impossible to reconcile with the language of section 707, subdivision (c), which clearly does not create a *mandatory* or *irrebuttable* presumption. (Cf. *People* v. *Roder* (1983) 33 Cal.3d 491, 498 [189 Cal.Rptr. 501, 658 P.2d 1302].)

It is important to understand that the case under review is distinguishable from *Steven S.* (and from all other reported cases interpreting § 707, subd. (c)) in one critical respect. As we stated in *Steven S.,* the "basic fact" from which the presumption in that case arose having been established by the allegation in the petition and motion for fitness hearing that the minor had committed a listed offense, "*and no question having arisen as to the basic fact,* the juvenile court . . . was required to assume the existence of unfitness unless persuaded to the contrary by a preponderance of the evidence. [Citation.]" (*Steven S., supra,* 119 Cal.App.3d at page 178, italics added.) In the instant case, on the other hand, the "basic fact" that gives rise to the presumption was immediately placed in question when, on May 17, 1984,

significant history of this sort; (4) that previous attempts by the juvenile court to rehabilitate the minor succeeded, or at least were not altogether unsuccessful; and (5) that the circumstances and gravity of the offenses alleged to have been committed are not in and of themselves such as to render the minor unfit for treatment under the Juvenile Court Law.

five days prior to the fitness hearing, petitioner formally requested a detention rehearing and probable cause hearing.[8] This is a very different situation from that presented in *Steven S.* The issue in that case was not whether the minor was properly charged with an offense that gives rise to the presumption (which for purposes of the fitness hearing the minor did not dispute) but the *effect* of the presumption. We had no occasion in *Steven S.* to inquire whether, in order to invoke the presumption when its application is challenged, the prosecutor must preliminarily establish in some fashion that the minor has committed the listed offense alleged in the petition, and, if so, the extent of the showing that must bé made. *Steven S.* thus sheds no light on the issue that confronts us here; and neither has that issue been directly addressed by any other reported decision in this jurisdiction.

■ Although it involved the detention hearing prescribed by section 635 rather than the fitness hearing authorized by section 707, the opinion of the California Supreme Court in *In re William M., supra,* 3 Cal.3d 16, is nonetheless directly relevant to the issue before us. In that case a petition was filed alleging that the minor came within the provisions of section 602 specifying as grounds the minor's sale of marijuana to an officer. The youth was taken into temporary custody pursuant to an arrest warrant and detained in the county juvenile hall until the detention hearing. At the hearing the court refused to receive any evidence tending to show that the minor should not be detained and announced the rule that "'*anybody who sells marijuana or LSD is detained here until his regular hearing, for the safety of others.*'" (*Id.,* at p. 20, italics in original.) In short, the trial court considered that the mere allegation in the petition of the sale of marijuana conclusively established the necessity of detention. In striking down this approach, the Supreme Court declared that the nature of the charged offense cannot, without consideration of other pertinent circumstances, constitute the sole basis for detention; otherwise the detention hearing prescribed by section 635 "would be pointless." (*Id.,* at p. 30.) Because the decision to detain a minor is fraught with "grave consequences," the use of mechanical policies for automatic detention was held by the court to infringe "elementary requirements of individualized justice and due process." (*Id.,* at p. 31.) Detention cannot be ordered, the court stated, unless, at a minimum, the probation

---

[8]The detention rehearing was sought on the basis of section 252 (which applies to juvenile court rehearings generally and specifies that ordinarily the request must be acted upon by the court within 20 days) instead of, as it could have been, section 637 (which applies specifically to detention rehearings and provides that, in circumstances such as those here presented, the rehearing must be held within 3 judicial days of the request). By making the request for a detention rehearing under section 252, the minor herein effectively waived his right to a rehearing within three judicial days. Nonetheless, in light of the substance of petitioner's motion for a detention rehearing and the companion motion for a so-called "probable cause hearing," the former motion should otherwise have been treated as if made under section 637.

officer presents "a prima facie case that the minor committed the alleged offense, . . ." (*Id.*, at p. 28.)

██ Shortly after the decision in *William M.*, the Court of Appeal in *In re Dennis H., supra,* 19 Cal.App.3d 350, elucidated the sort of evidence essential to make out a prima facie case that the minor committed the alleged offense. Reaffirming the view earlier expressed in *In re Larry W.* (1971) 16 Cal.App.3d 290, 293 [94 Cal.Rptr. 31], that in certain circumstances *William M.* did not prohibit the use at a detention hearing of written probation and police reports in lieu of oral testimony,[9] the court in *Dennis H.* declared that where the minor challenges the sufficiency of the evidence such documents cannot alone support a detention order if they contain "only hearsay (other than the kinds of hearsay made admissible over objection by the Evidence Code), not authenticated by any showing of the credibility of the informants and the basis of their statements." (*Id.*, at p. 354.) While such hearsay reports are admissible, they do not suffice to meet the burden of proof unless accompanied by independent "credible factual data." (*Ibid.*)

*William M.*, as interpreted by *In re Dennis H.*, thus stands for the proposition that where a minor challenges the sufficiency of the evidence upon which detention is sought, the minimum demands of due process and fair treatment require the prosecution to establish a prima facie case based on competent and relevant evidence. That is, not only is the prosecution obliged in such circumstances to produce more credible evidence than is provided by unauthenticated hearsay statements set forth in a probation or police report, but, if the minor exercises his right to confront and cross-examine witnesses against him, it becomes the duty of the court to insure that such persons are present at the appropriate hearing. (*In re Dennis H., supra,* 19 Cal.App.3d at p. 355.)

In 1975, the Legislature amended the Welfare and Institutions Code to bring it into conformity with *William M.* This was done by adding to section 637 the provision that, "If the minor . . . requests evidence of the prima facie case, a [detention] rehearing shall be held within three judicial days

---

[9]The court in *Larry W.* addressed itself to the evidentiary standards that apply when the minor does *not* exercise his right to confrontation and cross-examination. It was only in that situation that it was held permissible for the court to rely solely on written reports of either a probation or police officer to find the prima facie case necessary for detention. The court also made it clear that its holding as to the use of such written reports was necessitated by the short time limits imposed by sections 631 and 632 because the minor did not request additional time for the court to produce witnesses. The instant case is distinguishable from *Larry W.* because the minor here did assert his right to confrontation and cross-examination and, because he waived his right to a rehearing within three judicial days (see fn. 8, *ante*), the short time limits of sections 631 and 632 were inapplicable and time did not unduly constrain the court's ability to produce the necessary witness.

to consider evidence of the prima facie case. ██ ██ ██ If the prima facie case is not established, the minor shall be released from detention."[10] (§ 637, as amended by Stats. 1975, ch. 1266, § 1, p. 3324.)

 We find no compelling reason to eliminate the requirement that the prosecution establish the prima facie case, and do so in the manner spelled out in *Dennis H.*, simply because the offense alleged in the petition is among those enumerated in subdivision (b) of section 707; indeed, because it exposes the minor to much more severe treatment, the allegation of such an offense might arguably require greater, not lesser, procedural safeguards. Nonetheless, what happened in the instant case is that, despite his timely challenge to the sufficiency of the evidence to show that he committed the alleged offenses, petitioner was effectively deprived of his right to require the prosecution to establish a prima facie case; and this deprivation resulted solely from the fact that the offenses alleged were among those that subjected the minor to the presumption of unfitness.

As described at the outset, the detention rehearing and probable cause hearing requested by petitioner were consolidated with the fitness hearing requested by the prosecution. At this consolidated hearing, the court first denied petitioner's request that the prosecutor be required to establish probable cause prior to the determination of unfitness under section 707. Next, turning to the question of fitness, the court received the probation report in evidence and heard the testimony of four witnesses. None of those who testified was a victim or percipient witness of the alleged offenses described in the probation report, and the testimony was confined to the five criteria specified in subdivision (c) that must be evaluated in the determination of fitness. On the basis of this testimony and the probation report, the court determined that petitioner had not overcome the statutory presumption of unfitness. Finally, on the basis of the transcript of the earlier detention hearing, at which the sole evidence received in support of detention was a one-page boilerplate "Detention Warrant Information Sheet" prepared by

---

[10]The phrase "prima facie case," as employed in the pertinent case law and in section 637, is nowhere specifically defined as an abstract proposition. We believe that, for present purposes, "the prima facie case" amounts to "sufficient cause" within the meaning of Penal Code sections 871 and 872. "That phrase is generally equivalent to 'reasonable and probable cause' which has been defined as such a state of facts as would lead a man of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. (Pen. Code, §§ 871, 872; *People* v. *Uhlemann* (1973) 9 Cal.3d 662, 667 . . . .)" (*People* v. *Orduno* (1978) 80 Cal.App.3d 738, 750 [145 Cal.Rptr. 806], cert. den., 439 U.S. 1074 [59 L.Ed.2d 41, 99 S.Ct. 849].

This definition should not, however, be taken to suggest that a juvenile detention hearing (§ 635) or rehearing (§ 637) is the equivalent of an adult preliminary hearing. There is no such equivalence, because unlike an adult, "the minor has no right to prove an affirmative defense for the sole purpose of having the charges against him dismissed—the issue being detention, not guilt." (*In re Korry K.* (1981) 120 Cal.App.3d 967, 971 [175 Cal.Rptr. 91].)

the probation department, the court denied petitioner's request for a detention rehearing.

The only evidence pertinent to the offenses alleged in the petition that was received or considered at the consolidated hearing was the probation report and the "Detention Warrant Information Sheet." As the probation officer conceded in his testimony, these documents consisted entirely of unauthenticated hearsay statements taken from a police report. The probation officer did not interview the author of that report nor any victim or witness. Such evidence clearly does not meet the standard imposed by *In re Dennis H., supra,* 19 Cal.App.3d 350. Thus, the prosecution has never established a prima facie case that the minor committed the listed offenses that were utilized to subject him to the presumption and, because he could not overcome that presumption,[11] to expose him as well to trial and punishment as an adult. By denying petitioner's requests for establishment of the prima facie case, the juvenile court permitted the rebuttable presumption of unfitness to operate also as an irrebuttable presumption that the minor committed the alleged offenses, thereby relieving the prosecution of the need to respond to petitioner's challenge to the sufficiency of the evidence. We reject the use of the presumption in this manner because it is not justified by the language or purpose of section 707, because it evades procedural safeguards mandated by the Fourteenth Amendment, and because it would permit prosecutorial charging discretion to usurp a judicial function.

### A.

Section 707 pertains exclusively to the procedures and criteria for determining whether a minor is a fit and proper subject to be dealt with under the Juvenile Court Law. There is nothing in that section that either explicitly or by necessary implication prohibits a minor from claiming that he did not commit the offense alleged in the petition.[12] The right to make

---

[11]It bears noting that petitioner apparently succeeded in persuading the juvenile court judge that he was fit to be dealt with under the Juvenile Court Law with respect to the first four of the five statutory criteria. At the time he declared Edsel unfit, the judge stated that "at least with regard to the criterion of the circumstances and gravity of the offense alleged to have been committed by the minor [i.e., the fifth criterion] I find the minor has not met his burden of proof." *Thus petitioner was deemed unfit solely on the basis of the allegation he tried but was not permitted to challenge.*

[12]Arguably, such a claim could be made in connection with the issue whether a minor is subject to the presumption of unfitness. Subdivision (c) provides that the presumption shall only be applied "[f]ollowing submission and consideration of the [probation] report, *and of any other relevant evidence which . . . the minor may wish to submit . . . .*" (§ 707, subd. (c), italics added.) If the referent of the word "relevant" is expansively interpreted to include the issue of the applicability of the presumption as well as the underlying question of fitness, the minor would be deemed entitled to show that he did not commit a listed offense in response to a prosecutor's claim that he is subject to the statutory presumption. We need not address this question, however, in light of our holding that the minor's right to challenge the allegations of the petition exists independently of and is not defeated by section 707.

such a claim arises not only in connection with the issue of fitness, but the issue of detention. A youth claimed to be unfit for treatment under the Juvenile Court Law is by definition one who is initially charged under section 602 and ordinarily detained under section 635. Such a youth has the statutory and constitutional right to demand the presentation of a prima facie case that he committed the alleged offense (§ 637; *In re William M., supra,* 3 Cal.3d at p. 28), and to insist that this be done on the basis of credible nonhearsay evidence. (*In re Dennis H., supra,* 19 Cal.App.3d at p. 354.) There is no reason in law or logic to deprive a minor of this right simply because the alleged offenses in question are among those listed in subdivision (b) and referred to in subdivision (c). Subdivision (c) was enacted in 1979, long after case law established the right of a minor to test the sufficiency of the evidence utilized to detain him and after the Legislature itself codified that right by its 1975 amendment of section 637. If the Legislature had intended to eliminate or otherwise diminish that right where a minor was alleged to have committed an offense alleged in subdivision (b), it would presumably have said so. It did not.[13] ■ Thus it is still true, as it was when *William M.* was decided in 1970, that "[t]he juvenile court, of course, may not assume guilt if the minor denies responsibility for the alleged offense." (*In re William M., supra,* 3 Cal.3d at p. 29, fn. 23, citing, inter alia, *In re Macidon* (1966) 240 Cal.App.2d 600, 610 [49 Cal.Rptr. 861].) ■ This assumption is proscribed as much in connection with application of the presumption of unfitness as it is in deciding whether to detain, for, as stated in Evidence Code section 600, subdivision (a), "[*a*] *presumption is not evidence.*" (Italics added.)

### B.

■ Our conclusion that section 707 does not deprive a minor of the right to challenge the sufficiency of the evidence that he committed an alleged offense is buttressed by the constitutional considerations that come into play in the evaluation of proceedings that may result in the loss of a minor's statutory right to be tried as a juvenile.

As we have earlier noted, both the United States Supreme Court and our own Supreme Court have emphasized that a judicial determination that a minor shall be tried and, if convicted, punished as an adult is a "critically important" decision that has "tremendous consequences" for the minor. (*Kent* v. *United States, supra,* 383 U.S. at pp. 553-554 [16 L.Ed.2d at p. 93]; see also, *People* v. *Chi Ko Wong, supra,* 18 Cal.3d at p. 718 and

---

[13] "Relevant here is the well-known canon of statutory construction declaring a presumption against repeals by implication." (*Kaplan* v. *Superior Court* (1971) 6 Cal.3d 150, 159, fn. 6 [98 Cal.Rptr. 649, 491 P.2d 1], citing *Warne* v. *Harkness* (1963) 60 Cal.2d 579, 587-588 [35 Cal.Rptr. 601, 387 P.2d 377].)

*Ramona R.* v. *Superior Court, supra,* 37 Cal.3d at p. 810.) We submit that those consequences are potentially far graver than the consequences of detention in a juvenile hall for a period which ordinarily does not exceed 15 judicial days. (§ 636.) We are, of course, cognizant that application of the statutory presumption, which is rebuttable, does not *compel* a determination of unfitness; yet we are also aware that, as exemplified by our decision in *Steven S., supra,* 119 Cal.App.3d 162, the presumption inevitably makes such an adverse determination far more likely than would otherwise be true. In light of this, due process and fundamental fairness demand procedural safeguards in application of the presumption of unfitness that are at least equivalent to those afforded in the no more consequential process of determining whether the minor may be detained. As stated by Justice Frankfurter in *Anti-Fascist Refugee Committee* v. *McGrath* (1951) 341 U.S. 123 [95 L.Ed. 817, 71 S.Ct. 624], "the right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." (*Id.,* at p. 168 [95 L.Ed. at p. 852], Frankfurter, J., conc.)[14]

One of the cardinal reasons section 707 cannot be construed to defeat a minor's right to test the sufficiency of the evidence is that, as we have earlier suggested, by relieving the prosecution of the burden of establishing the prima facie case such an interpretation would permit the statute to operate as a mandatory or conclusive presumption of probable cause at a critical stage in the proceedings. That is, either the court would not be free to independently evaluate the evidence claimed by the prosecution to justify application of the presumption of unfitness or, notwithstanding the presumption of innocence, the burden of persuasion as to the sufficiency of the evidence would be shifted to the minor. Since, as demonstrated by *In re William M., supra,* 3 Cal.3d 19, the duty to factually establish a prima facie case is based not simply upon statute (§ 637) but also upon constitutional considerations, it cannot be discharged through the evidentiary device of a mandatory presumption even if, as is not here the case, the Legislature had so intended. (See *Ulster County Court* v. *Allen* (1979) 442 U.S. 140 [60 L.Ed.2d 777, 99 S.Ct. 2213]; *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450]; and *People* v. *Roder, supra,* 33 Cal.3d 491.)

---

[14]The fact that the right impaired in this case, the right to be tried as a juvenile, is statutory rather than constitutional does not affect the right to be heard. (See *Goss* v. *Lopez* (1975) 419 U.S. 565, 572 [42 L.Ed.2d 725, 733, 95 S.Ct. 729]. Indeed, the right to be heard is so fundamental that it is not diminished even if the benefit in question is a privilege and not a right. (See *Bell* v. *Burson* (1971) 402 U.S. 535, 539 [29 L.Ed.2d 90, 94, 91 S.Ct. 1586]; *Goldberg* v. *Kelly* (1970) 397 U.S. 254, 262 [25 L.Ed.2d 287, 296, 90 S.Ct. 1011]; and *Shapiro* v. *Thompson* (1969) 394 U.S. 618, 627, fn. 6 [22 L.Ed.2d 600, 611, 89 S.Ct. 1322].)

## C.

We turn, finally, to the issue of prosecutorial discretion. In the juvenile court the district attorney maintained that petitioner's claim of the right to a probable cause hearing prior to the application of the presumption of unfitness "is an attack on the executive authority of the District Attorney and his charging discretion, and there is no law to support this at all." We do not agree.

By this argument, which simply ignores the statutory right of a minor to establishment of the prima facie case against him (§ 637), the district attorney attempts not really to protect but to significantly enlarge the consequences of his already considerable discretion to charge.[15] As we have indicated, the presumption set forth in section 707, subdivision (c), was designed to benefit prosecutors in two ways: first, it shifts the burden of proof on the issue of fitness from the prosecutor to the minor; second, it more heavily encumbers the minor's burden by requiring that he demonstrate fitness with reference to not one but "each and every one" of the five statutory criteria. These prosecutorial advantages relate not to the determination of probable cause, but to the determination of fitness. ■ The determination of probable cause means that there is sufficient evidence to commence the adjudication of guilt or innocence; the determination of fitness establishes the forum in which that adjudication shall take place. (*People* v. *Superior Court (Steven S.), supra,* 119 Cal.App.3d at p. 173.) ■ Because the issues of probable cause and fitness are discrete, and because section 707 addresses only the latter issue, the statute must be interpreted as leaving intact the constitutional and statutory requirement that evidence of the prima facie case be presented when the minor challenges the sufficiency of the evidence to constitute probable cause. Elimination of this requirement, it deserves to be pointed out, would in effect permit prosecutors rather than judges to determine whether evidence is sufficient to constitute probable cause at a critical stage in the proceedings.

It is no answer that the prosecution will eventually have to show probable cause in the adult court, for by that time the minor will already have been

---

[15]For critical analyses of prosecutorial discretion generally, see Vorenberg, *Decent Restraint of Prosecutorial Power* (1981) 94 Harv.L.Rev. 1521; Vorenberg, *Narrowing the Discretion of Criminal Justice Officials* (1976) Duke L.J. 651; Bubany & Skillern, *Taming the Dragon: An Administrative Law for Prosecutorial Decision Making* (1976) 13 Am.Crim.L.Rev. 473; Thomas & Fitch, *Prosecutorial Decision Making* (1976) 13 Am.Crim.L.Rev. 507; Davis, Discretionary Justice: A Preliminary Inquiry (1969); and Pound, *Discretion, Dispensation and Mitigation: The Problem of the Individual Special Case* (1960) 35 N.Y.U. L.Rev. 925. For quantitative analyses of certain aspects of prosecutorial discretion in the federal and California criminal justice systems, see Frase, *The Decision to File Federal Criminal Charges: A Quantitative Study of Prosecutorial Discretion* (1980) 47 U.Chi. L.Rev. 246 and Graham & Letwin, *The Preliminary Hearings in Los Angeles: Some Field Findings and Legal-Policy Observations* (1971) 18 UCLA L.Rev. 635.

deprived of the right to be tried under the Juvenile Court Law. Moreover, it is by no means always certain that in the adult court the prosecution will eventually have to show probable cause that the minor committed any offense earlier relied upon to summon up the presumption of unfitness. Section 707.1 provides that once a minor is declared unfit to be dealt with under the Juvenile Court Law, "the district attorney . . . shall acquire the authority to file an accusatory pleading against the minor in a court of criminal jurisdiction." There is no statutory requirement that the new accusatory pleading must charge the same offenses earlier alleged in the juvenile court or at least some other offense listed in section 707, subdivision (b). If at this later stage the prosecution realizes it cannot demonstrate probable cause that the minor committed any offense listed in subdivision (b) it can then charge an unlisted lesser offense *without thereby relieving the minor of the burdens of trial and possible punishment as an adult.* In short, if prior to application of the presumption of unfitness the prosecution is not required to demonstrate a prima facie case that the minor committed the listed offense alleged in the petition, the prosecution would possess the ability to detain a minor and invoke the presumption of unfitness by simply making an allegation it need never prove nor submit to judicial review of any sort. Such a result would not only be impossible to reconcile with sections 635 and 707, which prescribe judicial rather than prosecutorial processes for detaining a minor[16] and determining fitness, but would also infringe the separation of powers. In *People* v. *Tenorio* (1970) 3 Cal.3d 89 [89 Cal.Rptr. 249, 473 P.2d 993], a unanimous Supreme Court struck down, as violative of the California constitutional separation of powers, a statute providing that certain factual allegations which might increase the penalty for the offenses charged could not be dismissed by the court or stricken from the accusatory pleading *"except* upon motion of the district attorney." (*Id.,* at p. 94, italics in original.) As stated by Justice Peters, "[t]he judicial power is compromised when a judge, who believes that a charge should be dismissed in the interests of justice, wishes to exercise the power to dismiss but finds that before he may do so he must bargain with the prosecutor. The judicial

---

[16]Section 635, which mandates a prompt detention hearing, was drafted and proposed to the Legislature in 1960 by the Governor's Special Study Commission on Juvenile Justice. In its report, after describing the "shocking" number of juveniles unjustifiably detained in California, the Commission makes the following observations, among others:

"Some probation departments and law enforcement agencies defend their detention practices on the grounds that detention is of therapeutic value to the child. Others frankly admit that children are detained because of the convenience in conducting investigations and administering psychological examinations. While detention may have a therapeutic effect in selected cases, in the Commission's view, it is neither the function of law enforcement agencies nor probation departments to use it for this purpose. *In our opinion, this is clearly and unmistakably a judicial responsibility* which must be arrived at after juvenile court jurisdiction has been established." (Rep. of Governor's Special Study Com. on Juvenile Justice, pt. I, Recommendations for Changes in California's Juvenile Court Law (Nov. 1960) p. 42, italics added.)

power must be independent, and a judge should never be required to pay for its exercise." (*Id.*, at p. 94. Accord, *Esteybar* v. *Municipal Court* (1971) 5 Cal.3d 119 [95 Cal.Rptr. 524, 485 P.2d 1140].) The judicial power would similarly be compromised if the prosecution were able to obstruct an inquiry into the sufficiency of evidence to support allegations employed to detain a minor or subject him to a highly disadvantageous presumption. When a juvenile court judge determines whether to detain a minor or whether a minor is fit to be tried under the Juvenile Court Law he or she exercises a judicial power which is required to be based, at least in part, upon an examination of "[t]he circumstances and gravity" of the offenses alleged to have been committed by the minor. (§§ 635 and 707, subd. (c)(5).) In the exercise of these vital judicial functions, the court is not obliged by any prosecutorial prerogative to conclusively assume the existence of probable cause. (Cf., *People* v. *Geiger* (1984) 35 Cal.3d 510, 530 [199 Cal.Rptr. 45, 674 P.2d 1303].) On the contrary, "[i]t is an abuse of discretion to take judicial action in the absence of the existence of facts upon which action must be predicated. [Citation.]" (*In re Macidon, supra,* 240 Cal.App.2d at p. 611.) Therefore, when the minor challenges the sufficiency of evidence that he committed an alleged offense that legally gives rise to the presumption of unfitness the court cannot properly apply that presumption unless the prima facie case is first established.

 The expansion of prosecutorial power and concomitant diminution in judicial authority urged upon us by the People—which there is no reason to think our Legislature ever intended—would also create federal constitutional problems. As the United States Supreme Court has recognized, a prosecutor's responsibility to law enforcement is inconsistent with the constitutional role of a neutral and detached magistrate. (*Coolidge* v. *New Hampshire* (1971) 403 U.S. 443, 449-453 [29 L.Ed.2d 564, 572-575, 91 S.Ct. 2022].) Accordingly, in several contexts that court has also held that the prosecutor's assessment of probable cause is not sufficient alone to justify the deprivation of important rights prior to trial. (See, e.g., *Gerstein* v. *Pugh* (1975) 420 U.S. 103, 116-119 [43 L.Ed.2d 54, 66-68, 95 S.Ct. 854]; *Shadwick* v. *City of Tampa* (1972) 407 U.S. 345, 348 [32 L.Ed.2d 783, 787, 92 S.Ct. 2119]; *Albrecht* v. *United States* (1927) 273 U.S. 1, 5 [71 L.Ed. 505, 508, 47 S.Ct. 250].)

Thus, without invading the conventional parameters of prosecutorial discretion to charge, our interpretation of section 707 saves the statute from infirmities that would expose it to both state and federal constitutional challenge. (See, e.g., *United States* v. *Bland* (S.D.Tex. 1971) 330 F.Supp. 34, 39.)

For the foregoing reasons, we hold that the allegation in the petition that a minor committed any of the offenses listed in subdivision (b) of section

707 does not relieve the prosecution of the need to establish a prima facie case in the manner described by *In re Dennis H., supra,* 19 Cal.App.3d 350, when, prior to the fitness hearing, the minor requests that this be done.[17] In the interests of judicial economy, the hearing at which the prima facie case must be established may be consolidated with the fitness hearing if this does not conflict with the minor's right to a detention rehearing within the time limits prescribed by section 637, which right may be waived by the minor. In any event, the issue of fitness cannot be considered unless the prima facie case is first made out.

Because in this case the prosecution was not required to and did not establish a prima facie case in response to the minor's timely challenge to the sufficiency of the evidence, the orders denying a detention rehearing and declaring the minor unfit to be dealt with under the Juvenile Court Law must be vacated.

Let a peremptory writ of mandate issue directing respondent court to vacate its orders denying a detention rehearing and finding petitioner unfit to be dealt with under the Juvenile Court Law, and to conduct a new fitness hearing consistent with the views expressed herein.

Rouse, J., and Smith, J., concurred.

---

[17]Since our holding is based not only upon section 637, but also the constitutional considerations described in *In re William M., supra,* 3 Cal.3d 19, it applies even in those very limited instances in which the minor against whom the presumption of unfitness is invoked is not detained and therefore has no right to a detention rehearing under section 637; that is, the prosecution cannot evade the need to establish a prima facie case by persuading the juvenile court not to detain the minor.